55894. RIVES E. WORRELL COMPANY, INC. et al. v. KEY SYSTEMS, INC.

SMITH, Judge.

Appellants, Rives E. Worrell Company and Hartford Accident & Indemnity Company, appeal from the judgment entered against them after a jury verdict in

favor of appellee. They allege that the evidence did not support the verdict and that the court erred in charging the jury, in overruling their motion for directed verdict and in allowing appellee to make a certain amendment to its pleadings. We find that the trial court did not commit the alleged errors and that, viewed in a light consistent with the verdict, the evidence did support the verdict; we therefore affirm.

Appellee, a Brunswick corporation, sued appellant Worrell, a Savannah corporation, for $10,750.93, the amount that, under a contract between the two parties, Worrell allegedly owed appellee because of the latter's completion of "custom manufactured building components" in accordance with the contract. The contract, Worrell's purchase order, required appellee to construct and deliver three sets of trusses for Worrell's use in fulfilling its obligations as general contractor on its Skidaway Island Plantation project. Worrell intended to utilize the three sets of specially designed trusses in building a restaurant and clubhouse, a tennis pavilion, and a boathouse. According to the contract, entered into on August 6, 1975, appellee was to furnish "six (6) copies of shop drawings [of the trusses appellee planned to construct] for [Worrell's] Architects' approval." As to delivery of the trusses, the contract provided: "Delivery will be as soon as practicable after shop drawings are approved and in no case later than the following schedule: 1. Tennis Pavilion — three (3) weeks after shop drawings. 2. Restaurant and Clubhouse Facilities — two (2) months after shop drawings. 3. Boathouse — three (3) weeks after notification from General Contractor."

Construed in a light consistent with the verdict, the evidence showed that appellee received the requisite approval of its shop drawings and notification from Worrell. Also the evidence demonstrated that the three sets of trusses were completed by the first week of October, 1975. In mid-October Worrell ceased work on the project because of financing difficulties encountered by the owner of the project and its lender, on the basis of which the owner failed to make required payments to Worrell. Worrell informed appellee of the difficulties and requested appellee and all other subcontractors involved

in the project "to hold up on the performance of all work and deliveries until it could be ascertained that payment would be forthcoming from the project. In a letter written to Worrell on December 31, 1975, appellee advised: "It has been thirty days since we have heard anything regarding the Skidaway Island project. We have hoped the financial problem with the Developer might be resolved by year end.

"As you can well appreciate we need some word on disposition of the trusses. We need to resolve the balance due on the trusses as we have invested monies into engineering, manufacturing and labor.

"It will be approximately ninety (90) days that we have held the trusses in storage. We have a space problem and request that you make arrangements to store the trusses in Savannah.

"We would appreciate your immediate assistance." In accordance with Worrell's request in its letter written January 20, 1976, appellee continued to store the completed trusses on its property and to await further notice to deliver, which notice never came. Worrell failed to comply with appellee's June 9, 1976, demand for payment, and on July 8, 1976, appellee filed suit against Worrell. Appellee later amended its complaint to include a demand for judgment against appellant Hartford Accident & Indemnity Company, the surety on the construction project. During the interval between December 31, 1975, and July 8, 1976, the trusses completely deteriorated and became useless, appellee having stored them outdoors under plastic sheeting.

On trial the evidence revealed that, sometime on the date suit was filed, the United States Small Business Administration instituted a foreclosure proceeding against appellee. On that date, in accordance with the SBA's orders, appellee vacated its offices and moved its property to a warehouse. Appellee amended its complaint to show that it was suing "for the use of United States Small Business Administration, as Assignee . . . which has, since the filing of this action, acquired the right to the proceeds of the recovery herein."

1. Appellants moved for a directed verdict on the ground that, prior to the institution of the suit, appellee

had assigned its right of recovery to the SBA and therefore was not the real party in interest. See CPA § 17 (a). No written assignment was introduced into evidence, but the parties assumed that an effective assignment had occurred at some time. Assuming that the motion otherwise had merit, the trial court correctly denied it because the evidence did not conclusively show that the assignment took place prior to the filing of the suit. Cf. *Employer's Liab. Assur. Corp. v. Keelin,* 132 Ga. App. 459 (1) (208 SE2d 328) (1974). Had appellants wished to have the issue properly resolved, they should have requested a jury charge on the issue of the timing of the assignment. See *Hill v. Henry,* 65 Ga. App. 374 (4) (16 SE2d 94) (1941).

2. Appellee's evidence indicated that the assignment took place after suit was filed. Therefore the trial court was correct to allow appellee's amendment stipulating that the suit was proceeding in appellee's name for the use of the SBA. CPA § 25 (c); *Gate City Cotton Mills v. Cherokee Mills,* 128 Ga. 170 (3) (57 SE 320) (1907); *Taylor v. Mentone Hotel &c. Co.,* 163 Ga. 357 (1) (136 SE 137) (1926).

3. Appellants argue that the court's failure to charge certain requested charges was error because the jury was thereby not informed that appellee had "the responsibility of using reasonable diligence to preserve the property." That argument presents no ground for reversal as the trial court exhaustively charged, though in language different from appellants' request, that appellee had the duty to use reasonable care to preserve the trusses and mitigate damages.

4. Contrary to appellants' contentions, the trial court appropriately and lucidly gave appellee's requested instructions on the legal principles set out in Code §§ 20-1104 and 20-1105. " 'Where a contract provides that there must be a tender of money or a performance of some obligation, the party bound to make the tender or perform the obligation may be relieved, and the tender and obligation held to have been waived, where the other party to the contract repudiates it, by act or word, or takes a position which would render tender or performance of the obligation imposed useless or impossible.' *Blount v. Lynch,* 24 Ga. App. 217, 221 (100 SE 644). See Code §§

20-1104 and 20-1105. Therefore, even if, as defendant asserts, plaintiff distributor did not properly tender the machines, he was relieved of that obligation when defendant instructed him to keep the machines where they were. Such conduct by defendant amounted to a waiver of plaintiff's contractual obligation to perform." *Stokes v. Walker,* 131 Ga. App. 550, 552 (206 SE2d 564) (1974).

5. The evidence authorized the verdict awarding appellee the contract price of the trusses. Construed in favor of the verdict, the evidence showed that appellee completed the trusses in accordance with the contract and that appellant Worrell's actions alone prevented ultimate delivery. See Code §§ 20-1104 and 20-1105 and Division 4, supra.

6. Appellee's motion for Code § 6-1801 damages is denied. *Knox Jewelry Co. v. Cincinnati Ins. Co.,* 130 Ga. App. 519 (5) (203 SE2d 739) (1974).

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

ARGUED JUNE 5, 1978 — DECIDED SEPTEMBER 7, 1978 —
REHEARING DENIED OCTOBER 5, 1978.

*Remler & Henderson, Albert N. Remler,* for appellants.
*Charlton E. Clark,* for appellee.

