## 61046. FIRST MORTGAGE CORPORATION OF VIRGINIA v. FELKER.

CARLEY, Judge.

Appellant-First Mortgage Corporation purchased a subdivision at a foreclosure sale and subsequently hired Ker-Ett Construction Company (Ker-Ett) as general contractor to complete seven houses therein. While the contract between First Mortgage and Ker-Ett did not designate any specific subcontractors to be used on the project, it did envision that some parts of the total job may be the subject of sub-contracts. Ker-Ett independently employed appellee-Felker to complete the heating and air conditioning work on the seven houses.

After the houses were substantially completed, First Mortgage began placing them on the market. Residents began occupying the homes in November of 1975 and problems with the heating systems developed. During a period of several very cold days, a number of new residents called First Mortgage to complain about the lack of heat in their homes. First Mortgage attempted unsuccessfully to contact Ker-Ett concerning these complaints. Being unable to contact Ker-Ett, First Mortgage immediately retained the services of a third party to repair or replace the defective heating systems. The sums paid out to have this work done were then deducted from the amount paid by First Mortgage to Ker-Ett on the construction contract.

Several days after Ker-Ett was sent payment reflecting these deductions, First Mortgage received a letter from Felker claiming

that Ker-Ett was indebted to him. Ker-Ett had deducted sums from its payment to Felker on the subcontract which corresponded with the amounts First Mortgage had deducted from its payment to Ker-Ett. Approximately two months after First Mortgage was notified of the dispute between the general contractor and its subcontractor, Ker-Ett sent Felker a check purportedly in satisfaction of all outstanding sums due him for the heating and air conditioning work. This check, marked "payment in full," was accepted, endorsed and cashed by Felker.

The instant litigation was subsequently instituted by Felker seeking damages against First Mortgage based upon First Mortgage's alleged tortious interference with Felker's contractual rights. Felker contended that the total amount received by him under his contract with Ker-Ett was deficient in an amount equal to that deducted by First Mortgage from its payment to Ker-Ett on the contract between them. The case proceeded to trial and the jury returned a verdict for Felker for $750 actual damages, $1,000 exemplary damages, and approximately $2,300 attorney fees. First Mortgage's motions for directed verdict and for judgment n.o.v. were denied and this appeal ensues.

1. It is urged that First Mortgage's motion for judgment n.o.v. was erroneously overruled because the evidence did not show a tortious interference with Felker's contractual rights.

Felker's entire theory of recovery is premised upon the contention that First Mortgage's actions with regard to its contract with Ker-Ett was a breach by First Mortgage of a duty owing to Felker. It is urged that had First Morgage not "wrongfully" secured the services of a third party to perform the heating system work and not "wrongfully" deducted those sums from the amount paid to Ker-Ett, Felker would have obtained his full payment from Ker-Ett. In short, Felker contends that First Mortgage's "breach" of its contract with Ker-Ett was a tortious interference with Felker's contract with Ker-Ett. We find this argument and theory an insufficient predicate upon which to base a finding of tortious interference with contractual rights. "A person not a party to a contract may *procure* without justification, its breach, and be liable therefore in tort. The *mere failure* of a party to a contract to carry out its terms will not give rise to a cause of action *ex delicto* in favor of a third person who has contracted with the opposite party to such contract, although in breaching the contract the party so failing may be charged with notice that the opposite party will not be able to perform its contract with such third person . . . In all cases cited in Georgia it is distinctly pointed out that parties to a contract have a property right therein, and *third parties* have no right maliciously to

*interfere* with this right — maliciously meaning 'any unauthorized *interference* or any *interference* without legal justification or excuse.' In all cases we have examined in this State such third party knowing the existence of a contract *procured* for his own benefit one of the parties to breach the same. There is a distinction between interference with contractual rights and procuring or inducing another to breach his contract; and failure of a third person to perform an independent prior contract made with one of the parties does not give rise to a cause of action for *inducing* the breach of the contract." *Wometco Theatres, Inc. v. United Artists Corp.,* 53 Ga. App. 509, 513-514 (186 SE 572) (1936). Thus whatever actions First Mortgage took with reference to its own contractual relationship with Ker-Ett afford Felker no basis for recovery in tort against First Mortgage for actions taken by Ker-Ett with reference to its contract with Felker. See *Kenimer v. Ward Wight Realty Co.,* 109 Ga. App. 130 (135 SE2d 501) (1964).

Nor can the verdict stand under a theory that First Mortgage's action in hiring a third party was a tortious interference with Felker's contract with Ker-Ett in that it retarded or made performance thereunder more difficult or expensive. See *Southern R. Co. v. Chambers,* 126 Ga. 404 (55 SE 37) (1906); *Piedmont Cotton Mills v. H. W. Ivey Const. Co.,* 109 Ga. App. 876 (137 SE2d 528) (1964). Unlike those cases, there was in the instant case no *direct interference* by First Mortgage with Felker's property interest in his contract with Ker-Ett. Felker relies upon First Mortgage's failure to pay *a third party,* Ker-Ett, as evidence that there was tortious interference with his own contract. However, First Mortgage's actions were in no way directed toward Felker's contract but, rather, were taken with reference to First Mortgage's *own* contract with Ker-Ett. Therefore, insofar as Felker relies upon First Mortgage's actions with reference to its contract with Ker-Ett as evidence of the tortious interference with his contract, that reliance is misplaced. "The *mere failure* of a party to a contract to carry out its terms will not give rise to a cause of action *ex delicto* in favor of a third person who has contracted with the opposite party to such contract, although in breaching the contract the party so failing may be charged with notice that the opposite party will not be able to perform its contract with such third person." *Wometco Theatres, Inc.,* supra, 513-514. The evidence shows conclusively that First Mortgage's actions in engaging the services of a third party and in deducting the sums from the amount paid to Ker-Ett were taken with reference to the contract between those two parties only. Apparently Ker-Ett conceded that First Mortgage had an absolute right to take these actions with regard to the contract because it accepted the

payment from First Mortgage reflecting these deductions. See *Rebel Sales Co. v. McDuffie & Assoc., Inc.,* 142 Ga. App. 693 (237 SE2d 6) (1977). Any question of whether Ker-Ett, in turn, had the right to deduct the sums from the amount paid Felker under the terms of the subcontract is a contractual issue between Felker and Ker-Ett and not an issue of tort between Felker and First Mortgage. *Tate v. Aetna Cas. &c. Co.,* 149 Ga. App. 123 (253 SE2d 775) (1979); *Kenimer v. Ward Wight Realty Co.,* 109 Ga. App. 130, supra. Felker accepted a check as "payment in full" from Ker-Ett for his work on the houses. Felker may not now seek these alleged contractual damages from First Mortgage through the guise of an action for tortious interference with contractual rights. Cf. *Kersh v. Manis Wholesale Co.,* 135 Ga. App. 943 (219 SE2d 604) (1975).

The evidence demanded a verdict for First Mortgage and it was error to deny its motion for judgment n.o.v.

2. Other enumerations of error need not be addressed in view of this disposition of this appeal made in Division 1.

*Judgment reversed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED FEBRUARY 25, 1981 —
REHEARING DENIED MARCH 16, 1981 —

*Carol V. Clark, Lowell H. Hughen,* for appellant.
*Joseph J. Felker, Jr.,* for appellee.