62379. UTILITIES & INDUSTRIES CORPORATION v. CARTER & ASSOCIATES.
62380. CARTER & ASSOCIATES v. JOHNSON-HICKS PALISADES.

CARLEY, Judge.

The instant case arises from a most complex set of facts. In 1967 D. M. Weatherly Company (Weatherly), a defendant below but not a party to this appeal, entered into a ten year lease agreement with the original owner-lessor of the premises. Appellee and cross-appellant Carter & Associates (Carter) was a party to this agreement and signed as the "agent." The terms of this agreement relevant to the instant appeal are as follows: "Lessor agrees to pay [Carter] as compensation for services rendered in procuring this lease, the first month's rent hereunder, and in addition thereto five percent (5%) of all rentals thereafter paid by [Weatherly] under this lease. Lessor, with consent of [Weatherly], hereby assigns to [Carter] the first month's rent hereunder and five percent (5%) of all rentals paid under this lease. Lessor agrees if this lease is extended, or if a new lease is entered into between Lessor and [Weatherly] covering leased premises, or any part thereof, then in either of said events, Lessor, in consideration of [Carter's] having procured [Weatherly] hereunder, agrees to pay

[Carter] five percent (5%) of all rentals paid Lessor by [Weatherly] under such extension or new lease. [Carter] agrees in the event Lessor sells leased premises that upon Lessor's furnishing [Carter] with an agreement signed by Purchaser, assuming Lessor's obligations to [Carter] under this lease, that [Carter] will release Lessor from any further obligations to [Carter] hereunder. . ."

In 1970 the building containing the leased premises was sold by the original owner-lessor to appellant-Utilities & Industries Corporation (U&I). The building leases, including Weatherly's, were assigned to U&I as the new owner. The proposed lease assignment agreement had contained the following language: "[U&I] hereby accepts said assignment and agrees to comply with all the convenants and agreements in the leases with the tenants . . ." This language of the assignment agreement was, however, stricken from the document. In its stead the following appeared: "[U&I] agrees to take said leases subject to agent's commissions set forth therein." It is undisputed that after the building was sold to U&I, Carter continued to receive its commissions from U&I under the 1967 Weatherly lease.

In 1971 U&I and Weatherly renegotiated the terms of the 1967 agreement and entered into a new lease which would be effective for the remainder of the original ten-year term. Under this 1971 lease, U&I agreed "to pay any and all agent's fees, commissions or other compensation which may be due or become due as a result of this agreement, or any other agreement pursuant to which [Weatherly] now occupies or heretofore occupied all or any part of Premises." Carter continued to receive its commission from U&I after the 1971 lease became effective.

In 1973 U&I sold the building to WHLT, Inc., not a party-defendant below and consequently not a party to this appeal. U&I assigned the leases to WHLT in an agreement containing the following language: "By acceptance hereof, [WHLT], as to obligations accruing after the date hereof, assumes all of [U&I's] obligations under the Leases both to the Lessees (or Tenants) and to the brokers (or agents), if any, named therein, and agrees, as to such obligations so accruing after the date hereof, to hold [U&I] harmless from any liability arising from some act or omission of [WHLT] performed or omitted subsequent to the date hereof." Within a very short time WHLT sold the building and assigned the leases to appellee and cross-appellant Johnson-Hicks (J-H). The assignment to J-H made no provision for its assumption of obligations to agents or brokers for commissions due under the leases. However, it is undisputed that Carter continued to receive its commission from J-H under Weatherly's 1971 lease throughout the remaining term of that

lease.

In 1977, when Weatherly's lease expired, J-H relet the premises to Weatherly under an entirely new lease agreement to which Carter was not a party. When Carter's demands for commissions under this 1977 lease were refused, Carter instituted the instant action against U&I, J-H and Weatherly. Subsequently, in an order from which no appeal has been filed, Weatherly, the lessee, was granted summary judgment and Carter's action continued solely against U&I and J-H. After discovery, all parties moved for summary judgment. The trial court heard all motions and granted Carter summary judgment against U&I and granted J-H summary judgment against Carter. In Case Number 62379 U&I appeals from the grant of summary judgment in favor of Carter and the denial of its motion for summary judgment. In Case Number 62380 Carter cross-appeals from the grant of summary judgment to J-H and the denial of its motion against J-H.

### Case Number 62379.

1. The covenant in the original 1967 lease to pay commissions was the original lessor's personal obligation to Carter. *James Talcott, Inc. v. Roy D. Warren Commercial,* 120 Ga. App. 544 (171 SE2d 907) (1969). It was not a covenant running with the land. *Goldberg v. Varner,* 72 Ga. App. 673 (34 SE2d 722) (1945). "If a covenant is personal, *it binds only the original parties and those who may assume its obligation,* and upon a conveyance of the land, or a transfer of the lease, as the case may be, the transferee takes free of the obligation of any personal covenant appearing in the deed or lease. [Cits.]" (Emphasis supplied.) *James Talcott,* 120 Ga. App. 544, 546 supra. Thus, it follows that Carter's claim against the subsequent owners-lessors of the building must be premised upon their successive assumption of the original owner-lessor's personal covenant in the 1967 lease.

Carter asserts and the trial court agreed that U&I assumed the original owner-lessor's personal obligation under the 1967 lease. As noted above, the agreement whereby the 1967 lease was assigned by the original owner-lessor to U&I had a provision for U&I's specific compliance with "all the covenants" in the lease. This language was stricken, however, and instead the parties agreed that U&I would accept the assignment of the leases "subject to agents' commissions set forth therein." Under these circumstances it is extremely doubtful whether the assignment agreement can be construed as evidencing U&I's assumption of the original owner-lessor's personal covenant with Carter concerning commissions. " '[T]he words "subject to" normally connote, in legal parlance, an absence of

personal obligation.' [Cits.]" *Parker v. Rexall Drug Co.,* 132 Ga. App. 32, 34 (207 SE2d 617) (1974). As thus construed, the 1970 assignment of the leases to U&I was not "an agreement signed by [U&I] assuming Lessor's obligation to [Carter] under [the 1967] lease" and the original owner-lessor was not released thereby. Furthermore, payments by U&I to Carter under the 1967 and the 1971 leases would constitute and evidence U&I's voluntary payment of the original owner-lessor's unassumed covenant with Carter for which no recovery can now be had and not U&I's subsequently "signed" written assumption of personal liability therefor. See *Hurt & Quinn v. Keen,* 89 Ga. App. 4 (3) (78 SE2d 345) (1953). If U&I was not obligated as a party to the original covenant or as the subsequent assumer of the obligation to pay commissions to Carter, the fact that it continued to do so under the old leases does not entitle Carter to commissions from U&I under the newly negotiated one. See *Goldberg v. Varner,* 72 Ga. App. 673, supra.

However, even assuming that U&I assumed the original owner-lessor's personal covenant with Carter, the record before us demonstrates that it was relieved of that obligation when it conveyed the building and assigned the leases to WHLT in 1973. By that written assignment agreement WHLT assumed "all of [U&I's] obligations under the leases both to the Lessees (or Tenants) and to the brokers (or agents), if any . . ." This language demonstrates that WHLT "assumed all obligations as well as benefits by reason of the transfer of the lease to it . . ." *Belau v. Brown & Sons Real. Co.,* 122 Ga. App. 76, 78 (176 SE2d 210) (1970). Thus, if U&I assumed the personal obligation of the original owner-lessor, WHLT assumed that obligation from U&I.

Carter asserts, however, that U&I did not present to it the assumption agreement signed by WHLT and that U&I was therefore never released by Carter from the personal obligation to it that U&I had assumed from the original owner-lessor. However, it is clear from the terms of the 1967 lease that Carter did not bargain for an *express release* of the personal obligation of the owner- lessor but, rather, for the express assumption by a new owner-lessor of the covenant from which express assumption the implicit release of the original obligor would result. Cf. *James Talcott,* 120 Ga. App. at 546 (2), supra. In short, the essence of what Carter bargained for and obtained in 1967 was the agreement of the original owner-lessor not to place it outside Carter's power to collect commissions by failing to procure a written assumption of the obligation from his successor in interest. See *Hunter v. Benamy Real. Co.,* 115 Ga. App. 829, 833 (156 SE2d 160) (1967). This objective would be met when the successor in interest assumed the obligation in writing, (see *Chamblee v. Davie,* 88 Ga. 205

(1) (14 SE 195) (1891)), Carter having no right to refuse to accept the new obligor or to decline to "release" the former from his personal covenant. "But even though the subject matter of a contract might of itself in a sense indicate that it was intended to be personal in its nature, the parties thereto can nevertheless by the express terms of the agreement manifest a different purpose and intent (5 C. J. 875); and thus where the contract is within itself and by its own express terms made assignable, a contrary purpose will not, as a matter of law, be set up and enforced, unless from a consideration of the entire instrument such a contrary construction is clearly demanded. Where the agreement in effect provides that the service may be performed either by the contracting party himself or by such other person as the contract may be assigned to, in order that a construction contrary to such expressed intent can as a matter of law be inferred it must appear, from the nature of the contract, that the performance of the obligation by another would be essentially different in result from what had been contracted for." *Adair v. Smith,* 23 Ga. App. 290, 291, 292 (98 SE 224) (1918). *Motel Mgt. Systems v. Billing,* 143 Ga. App. 702 (240 SE2d 173) (1977). Thus, furnishing the written assumption agreement to Carter was not a condition precedent to the satisfaction of U&I's contractual obligation to obtain a new obligor or to its entitlement to a "release" from its personal liability thereof. It was merely to evidence the satisfaction of that obligation and to facilitate its enforcement against the subsequent assumer. It is undisputed that U&I secured WHLT's written assumption of whatever obligation was owed by U&I to Carter, that Carter has been "furnished" a copy of that assumption agreement and that Carter could seek, though it has not, to enforce the obligation assumed by WHLT if breached by it. It follows that U&I is not in privity of contract with Carter, having assigned to WHLT any obligation it may have had to Carter. The evidence thus demonstrating that there was no contract extant between Carter and U&I the breach of which placed it outside Carter's power to collect its commissions, it was error to grant summary judgment in favor of Carter and to deny U&I's motion for summary judgment.

*Case Number 62380.*

2. Carter urges that the trial court erred in granting summary judgment to J-H and in denying summary judgment to it on that count of the complaint alleging that J-H was contractually liable for the commission. Carter's arguments are meritless. When the building was conveyed and the leases assigned by WHLT to J-H, no provision was made for J-H's assumption of the obligation to Carter for commissions. Therefore, as to Carter's covenant, J-H stands as

neither the original obligor thereon nor the assumer thereof. Thus, Carter's claim against J-H must fail because the latter is "not bound by the commission agreement, as it was not a covenant running with the land. [Cit.]" *Hunter v. Benamy Real. Co.,* 115 Ga. App. at 831, supra. Carter's claim for breach of the covenant must be asserted against whomever was obligated thereon. The fact that J-H continued to make commission payments to Carter under the old lease, though not obligated as an original party to the covenant to do so, does not entitle Carter to recover commissions from J-H under the new lease. See *Goldberg v. Varner,* 72 Ga. App. 673, supra.

3. Carter urges that it was erroneously denied and J-H was erroneously granted summary judgment on that count of the complaint alleging that J-H and WHLT tortiously conspired to deprive Carter of its commissions. Essentially this count alleges that J-H and WHLT entered into a conspiracy whereby WHLT agreed to assign and J-H agreed to receive an assignment of the leases without J-H's express assumption of the obligation to Carter for commissions, thus insulating J-H from contractual liability to Carter. It is readily seen that this count is no more than an allegation that any actions taken by J-H in pursuit of its contract with WHLT resulted in WHLT's breach of its contract with Carter. If, as the result of the agreement with J-H, WHLT breached its contract with Carter by failing to secure J-H's personal assumption of WHLT's obligation to Carter, such failure " 'does not give rise to a cause of action [against J-H] for *inducing* the breach of the contract.' [Cit.] . . . [W]hatever actions [J-H] took with reference to its own contractual relationship with [WHLT] afford [Carter] no basis for recovery in tort for actions taken by [WHLT] with reference to its contract with [Carter]. [Cit.]" *First Mtg. Corp. v. Felker,* 158 Ga. App. 14, 16 (279 SE2d 451) (1981). It was not error to grant J-H and to deny Carter summary judgment as to this count.

*Judgment reversed in Case No. 62379. Judgment affirmed in Case No. 62380. Deen, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 12, 1981.

*Robert H. Walling,* for appellant (case no. 62379).

*Edward Andrews, R. Peter Catlin III, Kenneth L. Millwood,* for appellee (case no. 62379).

*R. Peter Catlin III, Charles H. Ivy,* for appellant (case no. 62380).

*Edward Andrews, Robert H. Walling, Kenneth L. Millwood, John L. Lathem,* for appellee (case no. 62380).