### 74701. COMBS v. EDENFIELD.
(360 SE2d 743)

BEASLEY, Judge.

Appellant Lona Combs and Mr. and Mrs. Daniel Sea entered into a sales contract and one-year lease agreement dated March 7, 1985, in regard to residential property owned by Combs in Gwinnett County. On July 21, 1985, the Seas signed a sales contract on a house in Lilburn, Georgia which another real estate agent, appellee Helen Edenfield, had showed them. Title to the Lilburn house was transferred to the Seas in September and they moved into it in October.

Ms. Combs immediately filed suit against the Seas for rental payments due, breach of the sales contract and fraud, and against Edenfield and the listing agent of the Lilburn property, who was later dismissed, for tortiously interfering with the contractual relationship between her and the Seas. After discovery defendant Edenfield was

granted summary judgment, hence this appeal.

The undisputed facts underlying summary judgment are as follows: Mr. Sea was transferred by his business to Atlanta from Illinois on March 1, 1985. Between March 1 and 3, Edenfield telephoned Mrs. Sea in Illinois about selling the Seas a house in the Atlanta area; they discussed preferences and price range. On March 4 the Seas flew to Atlanta and Edenfield showed Mrs. Sea several houses that afternoon and the following day. While Mrs. Sea was out with Edenfield, Carolyn McMullan took Mr. Sea to see Combs' house, which he liked. On March 5 or 6, Mrs. Sea advised Edenfield that Mr. Sea had seen a house he liked and she would get back in touch with her. Mrs. Sea met the next day with McMullan to look at Combs' house. A sales contract and rental agreement on the Combs' house were signed March 7, Mr. Sea moved in on March 10, and Mrs. Sea and the children moved on March 25.

Several weeks later Mrs. Sea called defendant Edenfield to tell her they had decided not to exercise the option on the Combs' house because she did not like it. She asked Edenfield if she would be willing to show them other houses in the areas earlier seen. Edenfield advised Mrs. Sea to "bide it out" until they sold their residence in Illinois.

In June, Mrs. Sea called Edenfield to tell her they had a contract bid on their house in Illinois and she would get in touch with her when they got back from the closing to start looking at other houses. Mrs. Sea also asked Edenfield about the contract on the Combs' house. According to Mrs. Sea's deposition, Edenfield replied that she was not a lawyer and did not give legal opinions, but that she would be seeing a very good attorney the next day and would ask him to look at the documents. Edenfield stated by affidavit that when she reviewed the papers, it appeared to her the Seas had signed a lease/purchase contract, not a lease with an option to buy as they thought. She did not recommend the law firm for the purpose of obtaining an opinion that the contract documents were unenforceable, but because she "felt it imperative that the Seas be fully advised of their rights *and* liabilities by competent attorneys before making a decision." Edenfield took the documents to the law firm of the attorney she had mentioned, and Mrs. Sea made an appointment to see him but was referred to another lawyer in the firm.

On July 15, the Seas wrote Combs' agent McMullan asking to be released from the sales contract they signed March 7 on the Combs' property. On July 21 the sales contract on the Lilburn house which Edenfield showed them was signed, even though the Seas had been advised by the attorney that there was a 50 percent chance they might be sued on the Combs' contract. Mrs. Sea testified that she told Edenfield that Combs "said we have a problem but you're released."

The sale of the Lilburn house was closed on September 25, 1985, and the Seas vacated the Combs' house in October and moved into the new house.

There is no evidence upon which to base an action for tortious interference with a contractual relationship against Edenfield. OCGA § 51-9-1. The principles regarding this tort are set out in *Wometco Theatres v. United Artists Corp.*, 53 Ga. App. 509, 513 (2) (186 SE 572) (1936), repeated in *First Mortgage Corp. v. Felker*, 158 Ga. App. 14, 15 (1) (279 SE2d 451) (1981), and applied recently in *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 259 (4) (345 SE2d 924) (1986). To recover, Combs must show that Edenfield maliciously and without justifiable cause induced or procured the Seas to break their contract with Combs and thereby damaged Combs. " 'Maliciously' means any unauthorized interference or any interference without legal justification or excuse . . . *Luke v. DuPree*, 158 Ga. 590 (124 SE 13) (1924). This tort occurs, as recognized in *Wometco Theatres*, supra at 514, when a "third party knowing the existence of a contract *procured* for his own benefit one of the parties to breach the same."

The evidence discloses unequivocally and without contradiction that agent Edenfield did not unlawfully interfere with the contractual relationship between Combs and the Seas or procure or induce the Seas to breach the contract. While she would have an affirmative duty not to intermeddle, the evidence including all reasonable inferences favorable to plaintiff establishes that she did not violate any duty, but rather acted within the bounds of her profession as a real estate agent. She even alerted the Seas that they should obtain legal advice because they might be breaching their contract with Combs. This caution on her part is directly contrary to the theory that she induced the rupture.

It is clear, on the other hand, that before Edenfield was contacted again, the Seas were determined to move to a different location for personal reasons of their own, regardless of their having signed the contract with Combs. It is also clear that they were prepared to do this no matter what the legal consequences insofar as their contractual liabilities were concerned. Like the situation in *Steele v. Cincinnati Ins. Co.*, 171 Ga. App. 499, 500 (2) (320 SE2d 203) (1984), it was for reasons of their own that the Seas did not buy the Combs house; the fact that the sale did not take place was not caused by any action on Edenfield's part. As far as the evidence goes, Combs had no personal knowledge about the transactions between Edenfield and the Seas and failed to rebut the averments of Edenfield's affidavit or to establish any facts sufficient to withstand the latter's motion for summary judgment. See *Kelson Cos. v. Feingold*, 168 Ga. App. 391, 393 (309 SE2d 394) (1983). As in *First Mortgage Corp.*, supra at 17, whether Combs is entitled to recover from the Seas is a contractual

issue, and that remains pending.
 *Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 8, 1987.

*Robert M. Darroch*, for appellant.
 *T. Michael Farrell, R. Chris Irwin, Kathleen M. Pacious*, for appellee.