A89A1770, A89A1771. SOUTHERN BUSINESS MACHINES OF SAVANNAH, INC. v. NORWEST FINANCIAL LEASING, INC.; and vice versa.
(390 SE2d 402)

BIRDSONG, Judge.

This is an appeal by appellant Southern Business Machines of Savannah (Southern Business) of a motion granting summary judgment in favor of appellee Norwest Financial Leasing, Inc. (Norwest), and a cross-appeal by Norwest.

Appellant Southern Business assigned the rights to receive rent under certain equipment leasing agreements to appellee Norwest. The assignment agreement provided, inter alia, that Southern Business would indemnify Norwest for any claims involving Southern Business' obligations or liabilities under the leasing agreements; it also provided that Southern Business would reimburse Norwest for any and all damages and costs, including reasonable attorney fees, which Norwest might sustain as a result of Southern Business' breach of any warranty in the assignment agreement. A duly executed addendum to the assignment agreement further provided that Southern Business would have to pay an amount equal to the original purchase price paid by, less any rental payments received by, Norwest in the event a lessee

defaulted under the terms of an assigned leasing agreement. Subsequently certain lessees either defaulted or cancelled their leases without paying the rental provided for in the assigned lease agreements. Norwest made demand upon Southern Business for payment and the latter declined to pay.

Norwest commenced suit against Southern Business for breach of the assignment agreement and sought to recover the unpaid balance due under the leases, together with certain late charges, costs, post-judgment interest, and attorney fees. Subsequently, Norwest amended its complaint to aver a second count of fraud and a third count averring a breach by Southern Business of the terms of an unconditional guarantee allegedly contained in one of the assigned lease agreements. Southern Business filed a counterclaim against Norwest averring tortious interference with contractual relationships, libel, and the intentional and negligent breach of the duty of good faith.

Appellee Norwest filed a motion for partial summary judgment against appellant Southern Business on Counts I and III of its complaint and on appellant's counterclaims. The trial court granted Norwest's motion for partial summary judgment on Counts I and III of the complaint in the amount of $16,689.73 plus late charges of $834.39, but declined to award attorney fees. The trial court further granted summary judgment to Norwest on Southern Business' counterclaims. Appellant Southern Business appeals this grant of partial summary judgment, and appellee Norwest cross-appeals the trial court's failure to award attorney fees.

## I. Case No. A89A1770

1. Appellant Southern Business asserts that the trial court erred in ruling that appellee Norwest was not barred from recovery by its actions causing the lessees to breach their leases.

Appellant specifically asserts that the conduct of appellee Norwest in harassing certain lessees for collection of rent caused those lessees to breach or terminate their equipment rental leases, and that appellant's own performance under the assignment agreement was thereby excused under OCGA § 13-4-23.

OCGA § 13-4-23 provides that "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." Accordingly, " '[w]here a contract provides that there must be a tender of money or a performance of some obligation, the party bound to make the tender or perform the obligation may be relieved, and the tender and obligation held to have been waived, where the other party to the contract repudiates it, by act or word, or takes a position which would render tender or performance of the obligation imposed useless or im-

possible.' " *Stokes v. Walker*, 131 Ga. App. 550, 552 (1) (206 SE2d 564); accord *Rives E. Worrell Co. v. Key Systems*, 147 Ga. App. 383, 386 (4) (248 SE2d 686).

The record does not contain any admissible evidence giving rise to a genuine issue that conduct of appellee Norwest rendered appellant's performance of the contested provisions of the contract either useless or impossible. We fail to see how appellee's conduct in contacting lessees, even assuming it was accomplished in bad faith, prevented appellant from performing under the contract. See *Thompson v. Crouch Contracting Co.*, 164 Ga. App. 532, 534 (3) (297 SE2d 524). At most the record merely contains appellant's conclusions that he was prevented from performing under the contract, but does not include sufficient specific facts to support such a conclusion. Compare *Harrell v. Huntington Assoc.*, 190 Ga. App. 421 (1) (379 SE2d 194). Nor do we find that the *admissible* evidence regarding the manner in which appellee Norwest made collection contacts with lessees created any genuine issue of material fact as to whether such acts or conduct by Norwest constituted a repudiation of the assignment agreement. Accordingly, we are satisfied that the appellant has failed to establish the existence of any genuine material issue of fact regarding the affirmative defense which he has attempted to assert under OCGA § 13-4-23.

Moreover, we note that except for evidence pertaining to Johns-Manville Sales Corporation (see Division 2, below), the only evidence in the record regarding appellee's alleged harassment of other lessees by means of collection calls was hearsay in nature.

Further, the trial court expressly found, and we agree, that "[t]here is no question but that [appellant] has not performed under the hold harmless terms of the master [lease] assignment." Thus, we have a situation where no genuine material issue of fact exists either as to appellant's breach of the lease or as to the nonexistence of the affirmative defense claimed by appellant. " 'If the movant carries his initial burden, as was done in this case, and the respondent does not present refuting evidence *that is adequate* to raise an issue of fact, a summary judgment for the movant must be granted.' [Cit.] '(W)hile there may be some "shadowy semblance of an issue" (cit.), the case may nevertheless be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.' " (Emphasis supplied.) *Southern Trust Ins. Co. v. Braner*, 169 Ga. App. 567, 569 (1) (314 SE2d 241).

The case of *Kent v. Hunt & Assoc.*, 165 Ga. App. 169 (299 SE2d 123) cited by appellant Southern Business is factually distinguishable from the case sub judice. Accordingly, we find this enumeration of error without merit; the trial court did not err in granting summary judgment to appellee Norwest on its claim.

2. Appellant asserts that the trial court erred in ruling that appellant had not breached its obligation of acting in good faith in regard to its obligation and privileges under the lease assignment agreement.

With the exception of certain evidence pertaining to lessee Johns-Manville Sales Corporation, all evidence in the record pertaining to reasons why the various lessees either defaulted in or cancelled their equipment leases constituted inadmissible hearsay evidence. Hearsay evidence has no probative value, unless part of the res gestae, in a summary judgment proceeding. *Skinner v. Humble Oil &c. Co.*, 145 Ga. App. 372, 374 (243 SE2d 732); compare *Love v. Love*, 259 Ga. 423, 424 (1) (383 SE2d 329).

"In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. [Cits.] Moreover, opinion evidence can be sufficient to preclude the grant of summary judgment. [Cit.] The movant has the burden 'to show that no material issue remains, and the pleadings will be construed and inferences from the evidence interpreted favorably toward making and retaining a genuine issue of fact.' " *Mitchell v. Rainey*, 187 Ga. App. 510, 512-513 (370 SE2d 673).

Appellant Southern Business in essence asserts in its amended counterclaim, Count III, that appellee breached its good faith obligation toward appellant. This claim is sounded both in tort and in contract in the pleadings.

It is a well-recognized principle of contract law "that both parties are under an implied duty of good faith in carrying out the mutual promises of their contract." *Jackson Elec. &c. Corp. v. Ga. Power Co.*, 257 Ga. 772, 774 (1) (364 SE2d 556); accord *Stern's Gallery v. Corporate Property &c.*, 176 Ga. App. 586, 596 (337 SE2d 29). A duty of good faith and fair dealing is implied in all contracts in this state. See *West v. Koufman*, 259 Ga. 505 (384 SE2d 664). Thus, "whenever the co-operation of the promisee is necessary for the performance of the promise, there is a condition implied that the co-operation will be given." 17 AmJur2d, Contracts, § 256. However, it is equally settled that "there 'can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do.' " *Marathon U. S. Realties v. Kalb*, 244 Ga. 390, 392 (260 SE2d 85). Thus, a pleading averring a cause of action sounding in contract for breach of an implied covenant could be asserted in this case.

However, we find that under the attendant facts there exists no fiduciary relationship between appellant and appellee, flowing merely from the lease assignment agreement. In this instance, "the parties

were engaged in a transaction *with each other* in an effort to further their own separate business objectives." *Kienel v. Lanier*, 190 Ga. App. 201, 204 (378 SE2d 359). Thus, a cause of action for breach of bad faith arising from this transaction cannot be grounded in tort based on a breach of a fiduciary duty. Accordingly, to the extent that the order of the trial court granted summary judgment for appellee Norwest on the issue of a breach of bad faith claim grounded in tort, it was not in error.

Regarding the contract claim, the assignment agreement in this case expressly provided that "[s]eller [Southern Business] authorizes Norwest to confirm directly with such [l]essees the assignment of their [l]eases and to collect payments under the [l]eases." The trial court in its ratio decidendi construed the gravamen of appellant's allegations as being that appellee Norwest caused the lessees to cancel their contracts by making calls to collect monies owing under the leases, but observed that the contract gave the appellee authority to collect payments under the leases, and held that the appellant's president admitted in judicio appellee "was privileged to contact the lessees." The trial court then concluded appellant failed to respond with rebuttal evidence after appellee Norwest pierced their pleadings. The trial court also found that "the acts alleged to have caused the lessees nonperformance were admitted [by appellant's president] to be a *legitimate* exercise of the plaintiff's right to contact the lessees." (Emphasis supplied.) We disagree.

The provisions in the assignment contract, purporting to authorize appellee to contact lessees directly and to collect payment from them, did not expressly or impliedly authorize appellee to exercise this power in a manner constituting a lack of good faith. Moreover, appellant's president, contrary to the conclusion of the trial court, did not admit in judicio that appellee had *legitimately* exercised its contact and collection authority under the assignment agreements. Rather, the record reflects that appellant's president when asked about whether any agreement with appellee Norwest prohibited the contacting of customers responded, "Yeah, they *can* contact customers." (Emphasis supplied.) This response when examined in context is not an admission of fact but rather is a mere conclusion regarding the legal interpretation to be given to the provisions of the assignment agreement authorizing appellee Norwest to confirm directly with lessees the assignment of their leases and to collect payments due thereunder. "An admission in judicio applies only to the admission of fact and does not apply where the admission is merely the opinion or conclusion of the pleader as to law or fact. Thus, allegations which are conclusory, or which assert mere opinions of the pleader are not admissions in judicio." Green, Ga. Law of Evidence (2d ed.), § 238, p. 394. Accordingly, the rules pertaining to admissions made in plead-

ings or other admissions made in judicio have application to admissions of fact, "and [are] not applicable where the admission is merely the opinion on the part of the party making it as to the legal effect of the instrument sued on. . . ." *Clift & Goodrich v. Mincey Mfg. Co.*, 41 Ga. App. 38 (1) (152 SE 136). Accordingly, the trial court erred in concluding that appellant's president had made an admission in judicio that appellee Norwest had *legitimately* contacted lessees and had a privilege to so contact them.

The record reflects that a representative of Norwest did make an admission of fact to appellant's president that over 50 telephone calls for collection were made to Johns-Manville within a short period of time. Moreover, the plant controller of Manville Sales Corporation testified by deposition that the calls were harassing because of their number and also because of "[t]he tone of voice, the insistence, [and] the implication that we were not paying the invoices, were not making the proper payments."

We are satisfied that a genuine issue exists as to appellee Norwest's good faith regarding its collection practices with Johns-Manville Sales Corporation. Where the evidence on the issue of good faith is contested, the contest must be resolved by the trier of fact, as good faith is always a question for the jury. *Builders Transport v. Hall*, 183 Ga. App. 812, 816 (360 SE2d 60).

Accordingly, we find that the trial court erred in granting summary judgment on that portion of Count III of appellant's counterclaim, as sounded in contract for breach of covenant of bad faith, as pertained to appellee Norwest's contacts with Johns-Manville. Regarding the grant of summary judgment as to breach of covenant claims grounded upon contacts with other lessees and as to claims grounded in tort we find the trial court did not err in granting summary judgment as to Count III.

3. Appellant asserts that the trial court erred in ruling that appellee did not tortiously interfere with the business contracts or relationship of appellant.

"The intentional and non-privileged interference by a third party with existing contractual rights and relations constitutes a tort for which an action shall lie. [Cits.] Furthermore, the courts of this state have recognized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion *retards the performance* of the duties under the contract *or makes the performance more difficult or expensive*." (Emphasis supplied.) *McDaniel v. Green*, 156 Ga. App. 549, 550 (1) (275 SE2d 124). Thus, " ' "[i]t is actionable maliciously and without [justification] to induce one to break his contract with another to the damage of the latter." ' " *Steele v. Cincinnati Ins. Co.*, 171 Ga. App. 499, 500 (2) (320 SE2d 203); accord *Gilbert v. Jones*,

187 Ga. App. 303, 304 (1) (370 SE2d 155) (physical precedent only). In this regard, " ' "[t]he term 'maliciously' means *any unauthorized interference* . . . without legal justification or excuse. . . ." ' " (Emphasis supplied.) *Steele*, supra at 500 (2); accord *Combs v. Edenfield*, 184 Ga. App. 75, 77 (360 SE2d 743); *Gilbert*, supra at 304 (1). "The terms are ' "to be construed liberally: The act is malicious when it is done with knowledge of the [party's] rights and with the intent to interfere with them." ' " *Singleton v. Itson*, 192 Ga. App. 78 (383 SE2d 598). Intent may be proved by circumstantial evidence. In this case, a genuine material issue of intent to interfere can be inferred from the evidence of record regarding the number, frequency and nature of the contacts with Johns-Manville and regarding the continuance of the calls after Johns-Manville supplied certain payment information to Norwest.

In view of the admissible evidence of record and the reasonable inferences that can be drawn therefrom, we find that in regard to the claim of intentional interference as it relates to Johns-Manville a genuine issue of material fact exists. However, as discussed in Division 2, above, in regard to other lessees the relevant evidence offered as to intentional interference is hearsay and therefore is not probative for purposes of summary judgment.

Appellee Norwest asserts that to prove tortious interference with contractual relations, appellant must show interference with an existing, enforceable contract. Suffice it to say " '[i]t is a question of fact, and thus for the jury, whether the [appellant] has played a material and substantial part in causing [appellee's] loss of any benefits of the contract.' " *Perry & Co. v. New South Ins. Brokers*, 182 Ga. App. 84, 89 (4) (354 SE2d 852).

Accordingly, we find that the trial court erred in granting summary judgment on the intentional interference claim to the extent that such claim was predicated on contacts with Johns-Manville.

4. Appellant asserts that the trial court erred in ruling that the actions of the appellee in sending defamatory letters to the customers of appellant were privileged and that appellant had suffered no damages.

"As a general rule, the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. [Cit.] However, if the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge." *Thomason v. Times-Journal*, 190 Ga. App. 601 (1) (379 SE2d 551). "[A]s a defamatory statement may be made in indirect terms or by insinuation, the publication thereof must be construed as a whole. [Cit.] In doing so, the courts 'will not hunt for a strained construction in order to hold the words used as being defamatory.' [Cit.] In considering whether a writing is defama-

tory as a matter of law, any relevant extrinsic circumstances will be considered, because '(a) statement may . . . carry a defamatory meaning only by reason of extrinsic fact or circumstances by use of innuendo, inducement and colloquium.' [Cit.] Moreover, 'we will not look at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader.' " Id. at 602 (1).

Applying this test we find that the letters were not libelous as a matter of law, and that only by hunting for and applying a strained construction could the letters be otherwise construed. Accordingly, the trial court's grant of summary judgment as to a cause of action grounded in defamation was correct.

Moreover, the trial court found that "the publication of these letters was made in good faith to protect the plaintiff's interests in the equipment and thus the publication was privileged." See generally OCGA § 51-5-7 (3). Generally the question of whether a communication was privileged is a jury question. Cohen v. Hartlage, 179 Ga. App. 847, 849 (348 SE2d 331). " '(T)o make the defense of privilege complete . . . good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear.' " Id. " 'On summary judgment the issue is simply whether defendant established as a matter of law that he made privileged statements.' " Thomas v. Hillson, 184 Ga. App. 302, 303 (361 SE2d 278); Cohen, supra at 849. Examination of the record in toto reveals that the trial court did not err in concluding that as a matter of law publication of the letters was privileged.

For each of the above reasons, we find that the trial court did not err in granting summary judgment to appellee Norwest on appellant's counterclaim for libel by innuendo.

Appellant's other assertions of error are without merit.

## II. Case No. A89A1771

Cross-appellant Norwest's sole enumeration is that the trial court erred in failing to include an award of attorney fees in its grant of summary judgment to Norwest on Norwest's contract claim.

In view of the disposition taken in Section I, above, we find that the issue raised in this cross-appeal is not ripe for adjudication. Accordingly, this cross-appeal will be dismissed without prejudice to cross-appellant. See Brown v. Tomlinson, 246 Ga. 513, 515 (272 SE2d 258).

In view of our holdings, Case No. A89A1770 shall be remanded with direction that the trial court enter judgment consistent with the opinion in Section I, above. As observed in Winn-Dixie &c. v. Ramey, 186 Ga. App. 257 (1) (366 SE2d 785), an evidentiary posture which

might subsequently authorize the grant of a directed verdict "may not authorize the grant of summary judgment in a case, such as this, where 'the party making the motion for summary judgment is not required to carry the burden on the trial of the case.' "

For reasons stated in Section II, above, Case No. A89A1771 shall be dismissed without prejudice to cross-appellant.

*Judgment in Case No. A89A1770 affirmed in part and reversed in part and case remanded with direction. Case No. A89A1771 is dismissed. Deen, P. J., and Pope, J., concur.*

DECIDED JANUARY 4, 1990 —
REHEARING DENIED JANUARY 18, 1990 — 

*Duffy & Feemster, Dwight T. Feemster*, for appellant.
*McCorkle, Pedigo, Hunter & Johnson, David H. Johnson*, for appellee.