A92A1030. THE STATE v. KLINAKIS.

(425 SE2d 665)

BIRDSONG, Presiding Judge.

The State appeals the order of the trial court granting the motion to dismiss of appellee, Anthony Stanley Klinakis, Sr.

Appellee was charged by accusation of use of fighting words (OCGA § 16-11-39) and simple assault (OCGA § 16-5-20). Appellee filed a plea in abatement as to the OCGA § 16-11-39 charge and demurred to the charge of simple assault.

The incident giving rise to these offenses arose between representatives from different unions during an election confrontation in a Northwest Airlines hangar. Two days later, the alleged victim filed a written complaint with the National Mediation Board asserting that Northwest Airlines (NWA) supervisors were in the area but did nothing to investigate; and, accordingly, NWA "is running interference for the I.A.M. [the competitor union]" and NWA "has not maintained a neutral position before or after [the victim's union] filed for an election on NWA." *Held*:

1. The State asserts the trial court erred in finding that state court jurisdiction over the above offenses "was preempted by the jurisdiction of the National Labor Board." See generally 45 USC § 151 et seq. (Railway Labor Act). Appellee pertinently contended that the National Mediation Board had exclusive jurisdiction over representative disputes, and that this was such a dispute. On appeal, appellee asserts that contrary to the State's enumeration of error, the trial court did not rule that subject matter jurisdiction was preempted by the exclusive jurisdiction of the National Mediation Board, but rather held such jurisdiction was preempted because the language as averred in the accusation did not, as a matter of law, constitute "fighting words" in violation of OCGA § 16-11-39 (1).

(a) The order of the trial court does not express the basis for granting appellee's motion and plea in abatement as to Count 1, use of fighting words, but it does acknowledge the plea in abatement alleged, inter alia, lack of subject matter jurisdiction, lack of primary jurisdiction, and qualified privilege. The hearing transcript reveals the trial court concluded that because the State's accusation averred only words and heated discussion, rather than crimes of *actual violence,* such as battery, shooting, or killing, the state court lacked subject matter jurisdiction. The trial court did not hold that the words averred did not violate OCGA § 16-11-39 as a matter of law. Thus, we are satisfied that the trial court in essence concluded the State's interest in prosecuting criminal conduct based on the utterance of "ugly words" was not sufficient to preclude federal preemption. Thereafter, the trial judge granted appellee's motion to dismiss and plea in abatement as to "use of fighting words," and further ruled that the charge of simple assault was moot.

(b) Of major significance is that the use of "fighting words" does not constitute *protected* speech under the First and Fourteenth Amendments to the United States Constitution or under Art. I, Sec. I, Par. V of the Georgia Constitution. Fighting words constitute one of those narrow speech areas not constitutionally protected. In *Bose Corp. v. Consumers Union &c.,* 466 U. S. 485, 504-505 (104 SC 1949, 80 LE2d 502), it was held: "In each of [the unprotected] areas, the limits of the unprotected category, as well as the unprotected character of particular communications, have been determined by the judicial evaluation of special facts that have been deemed to have constitutional significance. In such cases, the [Supreme Court of the United States] has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited. . . . The principle of viewpoint neutrality that underlies the First Amendment . . . imposes a special responsibility on judges whenever it is claimed that a particular communication is unprotected." Thus, the Supreme Court in *Bose,* in determining whether certain remarks constituted constitutionally unprotected fighting words, "exercised independent judgment on the question whether particular remarks 'were so inherently inflammatory as to come within that small class of "fighting words" which are "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." ' " Id. at 505. *Thus, it is beyond controversy that a state may enact a statute making criminal the utterance of "fighting words," provided it does so in a constitutional manner, that is, the criminal statute must be facially constitutional and must be applied constitutionally to a particular offender. Lamar*

*v. Banks*, 684 F2d 714 (11th Cir.) (Ga. Code Ann. § 26-2610 (a), currently OCGA § 16-11-39, can withstand constitutional attack only if, as authoritatively construed by our courts, it is not susceptible of application to speech protected by the First and Fourteenth Amendments); compare *Gooding v. Wilson*, 405 U. S. 518 (92 SC 1103, 31 LE2d 408) (holding Ga. Code Ann. § 26-6303 unconstitutional on its face; statute was not narrowed to limit application thereof to fighting words).

The Constitution of this state provides that "[p]rotection to person and property is the paramount duty of government and shall be impartial and complete." Ga. Const. of 1983, Art. I, Sec. I, Par. II. In partial fulfillment of this duty, our legislature has enacted certain criminal statutes, including OCGA § 16-11-39 (fighting words) and OCGA § 16-5-20 (simple assault). These statutes, each in a different manner and for a different legislative purpose, either prohibit certain *limited* classes of constitutionally unprotected words or conduct directly relating to some form of an immediate *threat* of violence. Although these statutes make the prohibited words or conduct only misdemeanor offenses, one clear legislative purpose underlying these laws is to curtail such criminal activity before it escalates into or causes immediate acts of *actual* violence. The United States Supreme Court has noted that, even under the National Labor Relations Act (NLRA), "state jurisdiction to enforce its laws prohibiting violence, . . . is not pre-empted," observing that this type of violation does not involve federally protected conduct. *Sears &c. Co. v. Carpenters*, 436 U. S. 180, 204 (98 SC 1745, 56 LE2d 209). In *Youngdahl v. Rainfair, Inc.*, 355 U. S. 131 (78 SC 206, 2 LE2d 151), a NLRA case, after observing that the issue was not whether the strikers' conduct and language were likely to cause *physical* violence and declining to hold that the abusive language was federally protected, the court observed that "the state court was within its discretionary power in enjoining future acts of violence, *intimidation, and threats of violence,* by the strikers and the union." (Emphasis supplied.) Id. at 139. Further, in *Hudgens v. Local 315 &c. AFL-CIO*, 133 Ga. App. 329, 335 (210 SE2d 821) (dictum), which involved the NLRA, this court concluded "the state retains the power to prosecute and punish for violations of its criminal statutes." Compare *Sheet Metal &c. Assn. v. Carter*, 133 Ga. App. 872 (212 SE2d 645) holding that, notwithstanding the NLRA, the State has jurisdiction over the malicious tort action of conspiracy, inter alia, to deprive employment and means of livelihood. Thus, it would appear that even under situations involving the jurisdiction of the NLRA this state has retained concurrent jurisdiction to enforce those *criminal statutes* directly relating to the prevention of or incitement of immediate violence or to the prevention of the *threat* of immediate violence or violent injury. This is

so, though *actual* violence is not required as an essential element of these particular criminal offenses or whether the offenses have been designated by the legislature as felony or misdemeanor.

We find no viable reason not to apply this rule to questions of preemption under the Railway Labor Act. See generally United States Constitution, Tenth Amendment. At least one circuit has concluded that in suits involving the question of preemption under the Railway Labor Act, the area of state criminal law remains "a matter of primary state responsibility." *Air Line Pilots &c. Intl. v. UAL Corp.*, 874 F2d 439, 447 (4) (7th Cir.). Furthermore, in the area of enforcement of state criminal laws, "the presumption is against federal preemption" (id.) and, thus, favors an active exercise of criminal jurisdiction by the state. "The state interest in preventing 'conduct [and fighting words] marked by violence and imminent threats to public order' is compelling." *Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U. S. 369, 386 (89 SC 1109, 22 LE2d 344).

Appellant asserts that this case is distinguishable from *San Diego &c. Council v. Garmon*, 359 U. S. 236 (79 SC 773, 3 LE2d 775), a preemption case involving the NLRA. We note that as this case involves the Railway Labor Act, the NLRA has no *direct* application. *Railroad Trainmen v. Jacksonville Terminal Co.*, supra at 377. However, assuming that a preemption question is presented to which *Garmon* could apply (id. at 383, n. 19), we find the facts of this case fall within one of the exceptions therein recognized. In *Garmon*, supra at 243-244, it was held: "When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the [s]tates from acting. However, due regard for the presuppositions of our embracing federal systems . . . has required us not to find withdrawal from the [s]tates of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. [Cit.] Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the [s]tates of the power to act." First, we find that under the circumstances of this case, the exercise of our criminal jurisdiction poses no significant threat of interference with the policies and jurisdiction of the Railway Labor Act. Secondly, assuming such a conflict exists, the regulated criminal conduct in this case is so deeply rooted in local feelings and responsibility that, in the absence of compelling congressional direction, we will not infer that the United States Congress has preempted the state of its power to prosecute these violations of its criminal law. In this regard, we find significant the legislative purpose underlying these two separate and independent criminal statutes (OCGA §§ 16-11-39 and 16-5-20) in the

prevention and criminalization of constitutionally unprotected words and/or acts directly leading to the immediate threat of or incitement to violence; and we find equally significant, the state constitutional provision establishing the protection of people and property as "the paramount duty of government." Compare Ga. Const. of 1983, Art. I, Sec. I, Par. II with Art. I, Sec. I, Par. VII. Moreover, the resolve of our legislature that the prohibition of "fighting words" as necessary for the protection of our citizenry is emphasized by its documented efforts to promulgate effective criminal sanctions in this area notwithstanding the close scrutiny of such legislation by state and federal courts. Accordingly, we find *Garmon*, supra, and its progeny do not preclude Georgia courts from exercising criminal jurisdiction over the subject matter of these offenses in this case.

(c) We further find from an examination of the averments in the two counts that the violation of OCGA § 16-11-39 is based on the utterance of fighting words while the simple assault violation is based on certain physical conduct. The trial court erred in dismissing the simple assault charge as moot.

(d) In view of our disposition of this case, we find it necessary in the interests of judicial economy to reaffirm that OCGA § 16-11-39 must be given constitutional application as to this particular defendant. See generally *Lamar*, supra. The General Assembly has now "limited to 'fighting words' the maximum outreach of the breach of the peace provision of the opprobrious language statute, [OCGA § 16-11-39 (1)], consistent with *Gooding v. Wilson*, supra." *Williamson v. State*, 249 Ga. 851-852 (295 SE2d 305). OCGA § 16-11-39 must be limited in application to words that " 'have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.' " *Gooding v. Wilson*, supra at 524. Thus, courts shall limit application to "opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace . . . that is, words commonly called 'fighting words.' " OCGA § 16-11-39; compare *Davenport v. State*, 184 Ga. App. 214 (361 SE2d 219). Moreover, under OCGA § 16-11-39, fighting words should be viewed with regard to the factual circumstances of their utterance. "The circumstances surrounding the words can be crucial, for only against the background of surrounding events can a judgment be made whether these words had 'a direct tendency to cause acts of violence.' . . . '(C)onstitutional enforcement of even facially valid laws applied to "fighting words" now appears to depend as much on the factual circumstances surrounding a word's utterance as on the character of the word uttered.' . . . 'Although the words used may be judicially noted as profane and abusive, a trier of fact might nonetheless find they did not constitute "fighting words" — that is, words likely to incite the addressee to a violent reaction under the circumstances of the case.' " *Lamar*, supra

at 719 (III). Compare *Wilson v. State*, 223 Ga. 531, 533 (1) (156 SE2d 446) (legislative history found in *Gooding*, supra) (it is a matter for jury determination whether under the circumstances the words used were likely to cause a breach of the peace and whether there was sufficient provocation to excuse their use) with *Crolley v. State*, 182 Ga. App. 2, 3 (2) (354 SE2d 864) and *Rozier v. State*, 140 Ga. App. 356 (231 SE2d 131).

Moreover, if this confrontational situation is found to have arisen as a dispute regarding a forthcoming union representation campaign, among those factors to be evaluated (both in regard to whether the words, as proven, constituted "fighting words," and whether there exists sufficient "justification or provocation") are those recognized in *Linn v. United Plant &c. Local 114*, 383 U. S. 53, 58 (86 SC 657, 15 LE2d 582), to-wit: "Labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable *per se* in some state jurisdictions. Indeed, representation campaigns are frequently characterized by bitter and extreme charges, counter-charges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both [sides of a labor controversy] often speak bluntly and recklessly, embellishing their respective positions with imprecatory language." However, existence of a labor dispute does not give any party to the controversy an unfettered right to violate the applicable criminal law of this state, as that law will be defined properly for constitutional application by the trial court.

2. In view of the above holding, we need not address appellant's remaining enumeration of error.

*Judgment reversed. Andrews, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the opinion except with respect to Division 1 (d). As dicta, it reaches beyond the issues before the court at this time. Moreover, it could be misunderstood as a comment on the expected evidence. Nor does the record show any misapprehension by the trial court of the law to apply in the further proceedings.

ON MOTION FOR RECONSIDERATION.

Appellee Anthony Stanley Klinakis, Sr. has filed a motion for reconsideration. We decline to rule, based on the state of the evidence of record before us, that the words attributed to appellee did not constitute "fighting words" within the meaning of OCGA § 16-5-20. We further decline to determine whether the amended accusation of simple assault, Count 2, merged as a matter of fact with the accusation of fighting words, Count 1, as we find such issue as herein raised, is not

324

ripe for appellant adjudication. Cf. *Brown v. Tomlinson*, 246 Ga. 513, 515 (272 SE2d 258) (ripeness); *Southern Business &c. v. Norwest Fin. &c.*, 194 Ga. App. 253, 260 (390 SE2d 402) (dismissing cross-appeal without prejudice due to ripeness).

*Motion for reconsideration denied.*

DECIDED OCTOBER 29, 1992 —
RECONSIDERATION DENIED NOVEMBER 18, 1992 

*Keith C. Martin, Solicitor, Kimberly C. Carr, Jackie N. Stanton, Assistant Solicitors,* for appellant.

*Lynne Y. Borsuk, R. Stephen Roberts,* for appellee.