## A97A2575. JENKINS v. BRICE et al.
### (499 SE2d 734)

BEASLEY, Judge.

On March 14, 1995, Jenkins entered into a contract with the Brices for the lease and purchase of a house and real property. He took possession in May with monthly rental due through the December 31 closing date, but paid only for May (pro rata) and for June (late). He failed to pay the rent thereafter, which by affidavit he says was because the Brices refused to repair the property leaving it uninhabitable.

The Brices filed a dispossessory proceeding for possession, past due rent, and late fees. Jenkins counterclaimed but consented to an order for him to move out of the house by September 9. He vacated it then or sometime before September 13.

In October of the following year, the Brices amended their action to seek damages for breach of both the lease and purchase portions of the agreement. The court eventually entered summary judgment based on undisputed fact that Jenkins breached in both regards. It awarded damages to the Brices and dismissed Jenkins' counterclaims. Jenkins does not enumerate the dismissal as error.

He contends the court erred in granting the Brices summary judgment, in concluding he breached the contract without justification, in calculating damages, and in ruling that constructive eviction cannot be used as a defense for the period before Jenkins consented to move out.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)."[1] "[S]ummary judgment appeals are de novo reviews because summary judgment rulings are strictly matters of law and are not based at all on findings of fact, made by court or jury,

---

[1] *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

nor on weighing of evidence, nor on credibility of witnesses. Summary judgment rulings are based on undisputed facts."[2]

Both parties agree there was a contract between them and that the contract was comprised of the signed "amendment" dated May 11, 1995 and an earlier form purchase agreement of March 14, 1995, which was attached to Jenkins' answer and counterclaim as an exhibit.

1. The first issue is whether Jenkins' failure to pay the July rent is excused under the constructive eviction doctrine which Jenkins raised as a defense. It is undisputed that Jenkins was required to pay rent and that he did not do so after June.

"Two essential elements must be shown to establish the defense of constructive eviction. They are: (1) That the landlord in consequence of his failure to keep the rented building repaired allowed it to deteriorate to such an extent that it had become an unfit place for the defendant to carry on the business for which it was rented, and (2) that it could not be restored to a fit condition by ordinary repairs which could be made without unreasonable interruption of the tenant's business."[3] Put another way, "[t]o constitute an eviction which will operate as a suspension of rent, there must be either an actual expulsion of the tenant, or some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises."[4] "An act may be considered grave in character if it renders the premises untenantable or unfit for the use and benefit of the tenant in accomplishing one or more of the substantial purposes of the lease."[5] It must be shown that the tenants' use and enjoyment of the premises is not merely rendered "uncomfortable."[6]

Although there is some evidence the roof leaked in places, Jenkins offered into evidence the move-in/move-out inspection form which shows that as of the date Jenkins agreed to move out of the house, it was, in the opinion of the selling agent, in "all move-in condition." Jenkins signed the document, without contesting that statement. The only roof notation on the move-out form, other than reference to a garage roof leak, is with respect to kitchen or living areas: "These leaks are still active. Mr. Jenkins would come home to find puddles of water at front door." The fact that the roof of the house may have leaked, standing alone, is not evidence that the house was

---

[2] *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (1) (392 SE2d 535) (1990).

[3] *Hightower v. Daniel*, 143 Ga. App. 217 (237 SE2d 688) (1977); *Overstreet v. Rhodes*, 212 Ga. 521, 523 (93 SE2d 715) (1956).

[4] *Potts-Thompson &c. Co. v. Capital City &c. Co.*, 137 Ga. 648 (2) (74 SE 279) (1911); *Sunamerica Financial v. 260 Peachtree Street*, 202 Ga. App. 790, 794 (415 SE2d 677) (1992).

[5] *Sunamerica Financial*, supra.

[6] *Alston v. Ga. Credit Counsel*, 140 Ga. App. 784, 785 (1) (232 SE2d 134) (1976).

uninhabitable.[7] Jenkins offers no other evidence to support the contention. The court properly concluded there was no evidence from which a jury could find constructive eviction.

Jenkins' assertion in his brief that he was justified in refusing to pay rent because the Brices breached the contract first is not enumerated as error, and no supporting authority is given. This argument is not properly presented.[8]

The trial court correctly ruled that Jenkins breached the lease portion of the agreement; summary judgment was proper on that claim.

2. Next is whether Jenkins breached the purchase portion of the agreement so as to allow damages.

The Brices contend Jenkins breached the purchase agreement when he twice disavowed it. They submit the affidavit of their broker who states that at about the time the July payment was due, Jenkins told the broker "that he would not be closing on the purchase of the house," and "from that point on he referred any contacts from me to his attorney." They also allege that immediately prior to vacating the property, "Defendant informed Plaintiffs that he was refusing to purchase the property. . . ."

Jenkins denied the latter allegation in a verified answer. Properly verified pleadings containing specific denials of allegations and specific factual allegations where the contents of the pleadings indicate they were made on the personal knowledge of the verifying party must be considered on a motion for summary judgment.[9]

But Jenkins never submitted an affidavit or any other testimony or even a denial of the sworn statement that he told the same thing to the broker in July. This repudiation of the agreement is confirmed by all of Jenkins' behavior, which was inconsistent with an intent to close on the sale on December 1. He told the broker to contact his attorney, not himself, from then on. He ceased paying rent in July. Two months later he agreed to vacate the property rather than face eviction. He moved out, kept a key after the move-out inspection, and removed the security system that he had installed in the walls. He

---

[7] See *Hightower*, supra.

[8] Court of Appeals Rule 27 (c) (2); *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 550 (340 SE2d 207) (1986) ("error argued in the brief but not enumerated as error will not be considered on appeal, and error enumerated but neither argued in the brief nor supported by citation of authority is considered abandoned.").

[9] See *Hansen v. Mt. Yonah Scenic Estates Club*, 227 Ga. App. 258, 259 (488 SE2d 732) (1997) (verified pleadings must indicate that they were made on personal knowledge); *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988) (properly verified pleading that complies with OCGA § 9-11-56 (e) and made on personal knowledge is sufficient); *Foskey v. Smith*, 159 Ga. App. 163, 164 (283 SE2d 33) (1981) (verified denials of allegations together with verified specific factual allegations in an answer may withstand summary judgment).

took no action whatsoever after he moved to indicate that he intended to purchase the property. He submitted no evidence that he protested when the Brices sold the house to someone else on November 1.

Once Jenkins repudiated the agreement, the Brices were no longer bound to sell to Jenkins.[10] The trial court did not err in ruling that Jenkins breached the purchase agreement as a matter of law.

3. Jenkins contends the agreement provided that the sale was contingent on the sale of his previous home by December 31, 1995, and that he was relieved from his obligation to purchase and cannot be in default because the event did not occur. Because Jenkins breached the contract in July, this contention is moot.

4. The ordinary measure of damages for breach of a real estate sales contract is the difference between the contract price and the fair market value at the time of the breach. *Quigley v. Jones*, 174 Ga. App. 787 (332 SE2d 7), aff'd 255 Ga. 33 (334 SE2d 664) (1985). We find no law suggesting that in the case of an anticipatory breach the fair market value should be determined at the time the contract was to be performed (closing was to take place on December 1). The Brices introduced the November 1 sale price, and the court used this figure to calculate damages. The time of the breach was in July, when Jenkins told the Brices' agent he was not going forward with the purchase. There is no evidence that the November price is an accurate gauge of the fair market value in July.

The Brices argue that Jenkins submitted no contrary evidence and that the November sale was sufficiently close in time to when Jenkins moved out in September "as to avoid any reasonable inference that the fair market value of the property was anything other than $20,000 less than the $222,000 price contained in the Brice-Jenkins contract." They also offer their broker's testimony that the price was lower because the market deteriorated when "many more houses came on the market for sale." She also gave her professional opinion that at the time of the sale on November 1, $202,000 was "a fair price for the house."

But the Brices have the burden of proof respecting their damages and the facts must be construed in favor of Jenkins for the purposes of summary judgment. No evidence indicates whether the fall in the market price occurred between March 14 and July (between the date of the contract and the breach) or between July and November 1 (between the breach and the date of the sale), or gradually between March 14 and November 1. There is an issue of fact regard-

---

[10] *Rives E. Worrell Co. v. Key Systems*, 147 Ga. App. 383, 386 (4) (248 SE2d 686) (1978); *Whitley Constr. Co. v. Va. Supply & Well Co.*, 99 Ga. App. 419 (1) (108 SE2d 819) (1959).

ing the amount of damages awardable to plaintiffs.

In sum, partial summary judgment regarding the defense of constructive eviction and breach of the lease and purchase agreement is affirmed. The determination of damages is reversed and remanded.

*Judgment affirmed in part, reversed in part and case remanded. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 12, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998.

*Charles F. Peebles,* for appellant.
*Patrick J. Gibbs,* for appellees.