**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 4, 2015**

# In the Court of Appeals of Georgia

A15A0879. ELLIS et al. v. HARTFORD RUN APARTMENTS   McF-043
    LLC et al.

MCFADDEN, Judge.

Julian Ellis and Lisa Hicks filed this action for property damages and personal injury, alleging that the defendants failed to keep their apartment in good repair. The defendants, property owner Hartford Run LLC, property management company B&M Management LLC, and property management agent Sheila Foster,[1] counterclaimed for unpaid rent and for the rent due for the duration of the lease. The trial court granted the defendants summary judgment and the plaintiffs appeal.

On appeal, the plaintiffs argue that the trial court erred in granting the defendants summary judgment on their negligence claim because whether the

---

[1]Throughout the record, Foster's first name is sometimes written as Shelia and sometimes written as Sheila. We will refer to this defendant as Foster.

defendants breached their duty to maintain the property in good repair is a fact question requiring jury resolution; they were not required to present expert testimony on the issue of causation; and their knowledge of any defects does not bar their action. We agree that the plaintiffs submitted sufficient evidence to create a question of fact on the issue of breach of duty; that they were not required to submit expert testimony to support their property damage claim; and that their knowledge of any defects does not bar their action. We hold, however, that the plaintiffs were required to submit expert testimony to support their personal injury claim.

The plaintiffs also argue that the trial court erred in granting summary judgment on their negligence per se claim. We hold that the trial court did not err in granting summary judgment on plaintiffs' negligence per se claim insofar as it was based on violations of a city of Buford ordinance because they failed to submit a copy of the ordinance into evidence. Nor did the court err in granting summary judgment on the plaintiffs' negligence per se claim insofar as it was based on OCGA § 44-7-20, the statute requiring notification of a property's propensity toward flooding, because that statute does not apply to these facts. But the trial court erred in granting summary judgment on the plaintiffs' negligence per se claim insofar as it was based on OCGA § 44-7-13, the statutory duty to repair.

2

The plaintiffs further argue that they submitted evidence sufficient to create a jury question on their breach of contract claim for the defendants' violation of provisions of the lease. We agree.

Because we reverse the defendants' grant of summary judgment on some of the plaintiffs' claims, we also reverse the defendants' summary judgment on the plaintiffs' claim for punitive damages, which the trial court granted on the ground that all the plaintiffs' claims failed.

Finally, the plaintiffs argue that the trial court erred in granting summary judgment to the defendants on their counterclaim for unpaid rent. We agree because construing the evidence and pleadings in favor of the plaintiffs as nonmovants, whether the plaintiffs were constructively evicted from their apartment is a question for jury resolution.

Accordingly, we affirm in part and reverse in part the defendants' summary judgment.

1. *Evidence*.

When reviewing the grant of the defendants' motion for summary judgment, "[w]e view the evidence in the light most favorable to the plaintiff[s] and give [them] the benefit of all reasonable doubts and inferences." *Phillips v. King*, 214 Ga. App.

712 (448 SE2d 780) (1994) (citation omitted).[2] Viewed in this light, the evidence showed that the plaintiffs lived at the Hartford Run Apartments from April 16, 2010, until they moved out in July 2013, about three months before their lease expired. The plaintiffs first lived in Unit 1904 for six months. Then, on November 1, 2010, they moved to a two-bedroom unit, Unit 1712.

The plaintiffs experienced maintenance problems, which they reported to management, in both apartments. Ellis testified in his deposition that the pipes in the complex constantly broke, under the plaintiffs' building and elsewhere, and that although the defendants repaired the pipes, the crawlspace never dried completely. He reported to management recurrent mold in the master bathroom and musty smells throughout the apartment, specifically in the utility room, the kitchen, and the second bathroom.

In response to Ellis's complaints, management employees simply told him that it was not uncommon and to "just keep cleaning it and . . . applying the bleach and that everything should be fine." Defendant Foster, the property manager, told him "to

[2]That standard obtains notwithstanding the appellants' failure to respond to the motion for summary judgment (which they aver they did not receive) or to appear at the hearing on that motion. There is no such thing as a default summary judgment. *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 351 (1) (641 SE2d 586) (2007).

open the windows." Hicks tried to clean the mold with bleach. The mold problem continued to get worse, and Ellis reported it, but the defendants never "really did anything about it"; the mold always came back.

In addition to a mold problem, the plaintiffs' apartment was infested with roaches; roaches would crawl on them while they were sleeping. The plaintiffs reported the problem. Although the management arranged for periodic spraying – and the plaintiffs sprayed the apartment themselves -- the roach infestation continued for the duration of the plaintiffs' tenancy.

There were problems with the gutters and the roof, which the plaintiffs reported. When the plaintiffs reported water on the ceiling in the bathroom, management simply put a tarp on the roof, which remained there for the duration of the plaintiffs' residence. When they reported problems with the gutters, the defendants simply removed them, leading to flooding at the front of the apartment.

In June and July 2013, the city of Buford posted a letter and notice at the complex stating that, after its own investigation, it had determined that all buildings in the complex were dangerous and unfit for human habitation. At that time, the plaintiffs stopped paying rent and moved out.

The plaintiffs filed this action, alleging that although they had notified the defendants repeatedly of the problems of mold contamination, pest infestation, and water intrusions, the defendants never adequately resolved the problems. The plaintiffs alleged that the defendants breached their duty under OCGA § 44-7-13 to maintain the premises in good repair; that the defendants were negligent per se; and that the defendants had breached the lease. The plaintiffs sought damages for property damage, personal injury, moving expenses, and diminution of the apartment's rental value. The plaintiffs also sought litigation expenses and punitive damages.

The defendants answered the complaint and asserted a counterclaim, alleging that the plaintiffs breached the lease by failing to make rental payments and by abandoning the apartment without complying with the lease's early termination provision. They sought all unpaid rent and all rent accruing through the remainder of the abandoned lease term.

The defendants moved for summary judgment, and the plaintiffs filed no response. The trial court conducted a hearing at which the plaintiffs did not appear. The trial court granted summary judgment to the defendants on the plaintiffs' claims as well as on the defendants' counterclaim for "the reasons outlined in Defendants' Brief In Support of Motion for Summary Judgment." The plaintiffs filed this appeal.

6

2. *Negligence.*

(a) *Breach of duty.*

The plaintiffs argue that they have presented sufficient evidence to create a question of fact on the issue of the defendants' breach of duty. We agree.

The defendants had a duty to maintain the premises in good repair. See OCGA §§ 44-7-13 ("The landlord must keep the premises in repair."); 44-7-14 ("[T]he landlord is responsible for damages arising . . . from the failure to keep the premises in repair.") This duty requires the landlord to keep the premises in "that state of repair which is reasonably necessary to make them fit for the use intended by the lessee and known to the lessor." *Point Apartments v. Bryant*, 99 Ga. App. 110, 113 (107 SE2d 684) (1959). "The landlord's failure to make repairs within a reasonable time after due notice is given renders him liable to the tenant for damages resulting from the failure to make such repairs. This is true even though the landlord attempts to make repairs since he is responsible until the repairs are actually accomplished." *Booker v. J. T. Bickers Realty Co.*, 127 Ga. App. 614, 615 (194 SE2d 490) (1972) (citations omitted).

To show that it is undisputed that they did not breach their duty, the defendants relied on the affidavit of defendant Foster, the property manager. Foster testified that,

7

"[t]o [her] knowledge, the management office and/or maintenance staff address[ed] all complaints and service requests submitted by [p]laintiffs." But the plaintiffs testified otherwise. As detailed above, they testified that they repeatedly notified the defendants about the problems with the apartment, but in spite of this notice, the defendants never made the apartment fit for habitation. Accordingly, the plaintiffs have presented evidence creating issues of fact for jury resolution. OCGA § 9-11-56 (c)

(b) *Plaintiffs' knowledge was equal or superior to defendants'*.

The defendants argued in the brief supporting their motion for summary judgment that the plaintiffs could not recover because their knowledge of any defective condition was equal or superior to the plaintiffs'. But "a plaintiff/tenant's equal or superior knowledge of a dangerous condition will not always preclude his or her recovery for injuries caused by that dangerous condition." *Phillips*, supra, 214 Ga. App. at 713 (citation and omitted). When both the tenant and the landlord are aware of the defective condition, the question is: "Given the tenant's equal or superior knowledge, could he or she have avoided the [defective condition], either by avoiding the problematic area, or by using it more cautiously?" Id. at 714. The plaintiffs have provided sufficient evidence to create a fact question on this issue.

(c) *Expert testimony regarding causation.*

The plaintiffs argue that the trial court erred in granting summary judgment on the ground that they failed to present expert testimony regarding causation, a ground the defendants asserted in the brief supporting their motion for summary judgment. We hold that the plaintiffs have provided insufficient evidence to withstand summary judgment on the personal injury claim, but that they have provided sufficient evidence to withstand summary judgment on their claim for damage to their personal property.

(i) *Personal injury.*

Hicks testified that she had been very sick for months before moving out of the apartment. She testified that her doctor told her it was possible that her thyroid disease was related to the condition of her apartment. Her allergist told her that her asthma attacks were allergic reactions to dust, pollen, and mold. Hicks also saw doctors for bronchitis and sinus infection, but, she testified, she did not know if those conditions were caused by her living in the apartment.

A lay plaintiff may only testify about

his feelings, pains and symptoms, as well as to all of the characteristics of the injury, external and internal. This is the limit of his competency. Accordingly, [Hicks] could testify that there had been a worsening of [her] physical condition since [her taking up residence in the apartment],

9

but as to whether the worsening was caused by the [mold in the apartment] a medical opinion was required.

*Eberhart v. Morris Brown College*, 181 Ga. App. 516, 518-519 (1) (352 SE2d 832) (1987) (citations and punctuation omitted). A plaintiff must submit "expert medical testimony, based at least on reasonable probability, to establish a causal link between exposure to a substance and a medical condition." *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (3) (b) (658 SE2d 909) (2008) (citations and punctuation omitted) (defendant was entitled to summary judgment on plaintiff's personal injury claim because plaintiff presented no expert medical testimony to establish a causal link between her exposure to mold and her respiratory conditions). This is true at the summary judgment stage: "even in simple negligence cases, plaintiffs must come forward with expert evidence to survive a defense motion for summary judgment, where medical questions relating to causation are involved." *Cowart v. Widener*, 287 Ga. 622, 627 (2) (a) (697 SE2d 779) (2010).

The plaintiffs argue that this rule does not bar Hicks's personal injury claim because whether a known allergen causes an allergic reaction is not a specialized medical question. But the plaintiffs have pointed us to no authority supporting such an exception to the rule in a case such as this, where a plaintiff seeks damages for

10

allergic reactions to dust, pollen, and mold. Hicks also saw doctors for bronchitis and sinus infection. Because the plaintiffs failed to submit expert medical testimony linking Hicks's exposure to mold to her medical conditions, the defendants were entitled to summary judgment on the claim for damages for personal injury. Given this holding, we do not address the defendants' argument that Hicks's personal injury claim is barred by the running of the statute of limitation.

(ii) *Property damage*.

On the other hand, we believe the plaintiffs submitted sufficient evidence to withstand summary judgment on their claim for property damage. They testified that pipes broke under their unit, that the crawlspace was never dry, that mold grew in their apartment, that the defendants knew about these problems but failed to remedy them, and that they observed a growth on their belongings. Hicks testified that when they moved out they left most of their personal property, including furniture, clothes, bedding, and personal effects, because the property was covered with a growth. We find that whether the plaintiffs' claimed damage to their personal property was proximately caused by the defendants is a question for the factfinder. See *Sutton*, supra, 290 Ga. App. at 158-159 (3) (a).

3. *Negligence per se*.

The plaintiffs argue that the trial court erred in granting the defendants summary judgment on the plaintiffs' claim based on negligence per se. We agree in part and disagree in part.

(a) *The International Property Maintenance Code*.

The plaintiffs alleged that the defendants were negligent per se for failing to comply with the International Property Maintenance Code, which the city of Buford has adopted. But the plaintiffs failed to offer into evidence a copy of the Code, ask the court to take judicial notice of the Code, or specify which sections of the Code the defendants had violated. The defendants were thus entitled to summary judgment on the plaintiffs' negligence per se claim based on violations of the Code. *Norman v. Jones Lang LaSalle Americas*, 277 Ga. App. 621, 629 (2) (b) (627 SE2d 382) (2006).

(b) *OCGA § 44-7-20.*

The plaintiffs argue that they alleged in their complaint that the defendants were negligent per se for violating OCGA § 44-7-20. That statute requires a property owner seeking to lease his property to

> notify the prospective tenant . . . of the property's propensity of flooding if flooding has damaged any portion of the living space covered by the lease . . . at least three times during the five-year period immediately preceding the date of the lease. . . . [F]looding is defined as the

12

inundation of a portion of the living space covered by the lease which was caused by an increased water level in an established water source such as a river, stream, or drainage ditch or as a ponding of water at or near the point where heavy or excessive rain fell.

The plaintiffs do not allege that their living space flooded at least three times during the five-year period before their lease because of flooding from a river, stream, drainage ditch, or a ponding of water. OCGA § 44-7-20 is inapplicable to this case and the defendants were entitled to summary judgment on the plaintiffs' negligence per se claim to the extent it was based on violation of this statute.

(c) *OCGA § 44-7-13.*

The plaintiffs argue that they alleged in their complaint that the defendants were negligent per se for violating OCGA § 44-7-13. OCGA § 44-7-13 provides in pertinent part, "The landlord must keep the premises in repair." The plaintiffs presented evidence, including the failure to ameliorate the mold and roach problems, sufficient to create a jury question on the issue of whether the defendants violated this statute. Consequently, the trial court erred in granting the defendants summary judgment on the plaintiffs' negligence per se claim to the extent it was based on violation of OCGA § 44-7-13.

4. *Breach of contract.*

13

The plaintiffs argue that whether the defendants breached the lease agreement is a question of material fact. We agree. The agreement provided that "management shall not be liable for damage . . . or other loss of any kind to resident's or his occupant's personal property, unless such is due to management's negligence . . . . " and that the apartment was "in habitable conditions suited for residential purposes." Given the evidence described above, whether the defendants breached these contractual provisions is a fact question for the jury to resolve.

5. *Punitive damages*.

In their motion for summary judgment, the defendants argued that the plaintiffs' punitive damages claim failed because all of their other claims failed. Without significant elaboration, the trial court granted summary judgment for "the reasons outlined in Defendant's Brief In Support of Motion for Summary Judgment." As we reverse in part the defendants' grant of summary judgment on the plaintiffs' claims, we accordingly reverse the grant of summary judgment on the punitive damages claim.

6. *Counterclaim.*

The plaintiffs argue that the trial court erred by granting the defendants summary judgment on their counterclaim because a question of fact exists as to

14

whether the plaintiffs were constructively evicted, thereby defeating their obligation to pay rent. As the defendants observe, the plaintiffs did not raise constructive eviction as a defense to the counterclaim. But the plaintiffs were not required to assert any defense in a response to the counterclaim. *U. S. Traffic Corp. v. Turcotte*, 246 Ga. App. 187 (1) (539 SE2d 884) (2000). Nor were they required to respond to the summary judgment motion. *Sherman v. Thomas-Lane American Legion Post 597*, 330 Ga. App. 618, 620 (1) (768 SE2d 797) (2015). Instead, they could rely on the defendants' failure to remove any fact questions. Id. Construing their amended complaint "with considerable indulgence," *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996) and viewing the evidence in their favor as nonmovants on summary judgment, we conclude that the plaintiffs did allege and submit evidence showing that they had been constructively evicted.

> To show a constructive eviction that excuses the payment of rent,
>
> there must be either an actual expulsion of the tenant, or some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises. An act may be considered grave in character if it renders the premises untenantable or unfit for the use and benefit of the tenant in accomplishing one or more of the substantial purposes of the lease.

15

*Jenkins v. Brice*, 231 Ga. App. 843, 844 (1) (499 SE2d 734) (1998) (citations and punctuation omitted).

In the amended complaint, the plaintiffs alleged that the defendants failed to provide a safe and habitable living space and sought damages for, among other things, their moving expenses. As detailed above, they have provided some evidence that the defendants' failure to maintain the apartment in good repair rendered it unfit for habitation, forcing them to vacate their apartment. This evidence included the notice and letter from the city of Buford. Although the defendants argue that this evidence was inadmissible hearsay, it falls within the public records and reports exception to the hearsay rule. OCGA § 24-8-803 (8); *Maloof v. MARTA*, 330 Ga. App. 763, 767-768 (2) (769 SE2d 174) (2015).

Because the record demonstrates a question of fact as to the defendants' entitlement to rent, the trial court erred in granting the defendants summary judgment on their counterclaim.

*Judgment affirmed in part and reversed in part. Dillard, J., concurs; Ellington, P. J., concurs in the judgment only.*