DOYLE, Chief Judge.
Derrick George filed a premises liability action against Hercules Real Estate Services, Inc. (“Hercules”), the manager of the apartment complex in which George lived when he was shot by unknown assailants during a home invasion. George asserted claims for negligence, nuisance, and punitive damages. Hercules answered and filed a counterclaim for unpaid rent and other fees. The trial court granted summary judgment to Hercules as to all of George’s claims and as to Hercules’s counterclaim, and George appeals. For the reasons that follow, we affirm.
Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]
So viewed, the record shows that George moved into an apartment in The Villas at Lakewood in November 2010. On June 11, 2011, while he was not home, George’s apartment was burglarized between the hours of midnight and 2:00 a.m. In response to the burglary, Hercules repaired George’s damaged front door and installed a metal burglar guard, which made the door more secure when locked, but also made it difficult to engage the deadbolt. The apartment complex also had an alarm system that was monitored 24 hours per day and included a front-door panic button in each unit, including George’s. *844 According to George, after the burglary, he obtained a shotgun and kept it beside the front door for protection because he believed the complex was not safe.
In the early morning hours of July 27, 2011, George was home with a friend when someone knocked on his door. George turned on the front porch light, looked through the peephole, and asked who was there; he could see only the silhouette of a single individual, and he could not hear the person on the other side of the door. Although he was not expecting anyone at the time, George opened the door, propping his foot against it out of concern for his safety. When George opened the door, a second individual emerged, and he and the first man tried to force their way into George’s apartment. George pushed back and tried to lock the door, but he was unable to engage the deadbolt. George grabbed his shotgun and fired at the intruders. The intruders fired back, shooting George four times. The police never apprehended or identified the intruders. After the shooting, George did not return to his apartment nor did he pay rent for the apartment.
Hercules was aware of prior crimes at the apartment complex[2] and employed a private security service during day hours. Prior to the shooting, in May 2011, Hercules’s on-site manager requested that the corporate office provide additional security for the complex, but Hercules did not comply with the request.
George sued Hercules, asserting claims for negligence, nuisance, and punitive damages. With regard to his negligence claims, he alleged that Hercules failed to (1) keep the premises in proper repair; (2) provide adequate security; and (3) keep the premises safe. Hercules asserted a counterclaim against George for unpaid rent and moved for summary judgment on all claims. The trial court granted summary judgment to Hercules on all claims, and this appeal followed.
1. George’s claims. Because the record is devoid of any competent evidence to create a question of fact on the element of causation, Hercules was entitled to summary judgment as to George’s claims.[3]
*845 (a) Negligence. There are four elements to a negligence claim in Georgia:
(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff’s legally protected interest as a result of the alleged breach of the legal duty.[4]
On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.[5]
As the movant, Hercules offered evidence that as part of a $7 million renovation of the property, it installed a monitored security alarm equipped with a panic button in each unit; added exterior security cameras around the property; employed security guards in varying hours seven days a week; provided a twenty-four-hour phone number for maintenance and security issues; added an entry gate and landscaping to prevent unauthorized entry; and worked with the resident community, neighborhood watch, and police department to increase involvement and presence in the complex. Hercules also pointed to the lack of expert or other testimony in the record that any additional security measures would have prevented George from *846 being shot after voluntarily opening his door to a stranger after midnight. Stated another way, Hercules argued that there is a lack of evidence on causation — that there is no evidence that its alleged failure to provide adequate security caused George’s injuries.[6]
In response, George points only to the testimony of Celina Nyack, Hercules’s community manager, and Joe Bulat, the owner of the security company. While George states that the security company recommended additional security measures, a review of Bulat’s deposition belies this assertion. When asked whether he made any recommendations, Bulat replied: “I would have liked to have had more hours, of course, but if I said, do you want to increase the hours? No, they had a budget.”[7]
Similarly, George claimed that Hercules’s on-site manager “requested more security and surveillance because the tenants were ‘at the mercy of criminal activity on the property.’ ” A closer look at the e-mail written by Nyack shows that on May 25, 2011, she requested more security on weekend days and weekday evenings “[d]ue to the school year ending and the weather inclement [sic].”[8] Nonetheless, there is no evidence or testimony that reducing or increasing security would have affected the crime rate in general or the particular crime that injured George. Rather, the evidence showed that security patrol *847 hours had remained consistent, and the internal incident reports show that crime varied from month to month and year to year.[9]
This evidence is insufficient to create a question of fact on whether George’s injuries were proximately caused by any act or omission of Hercules.[10] For example, in Johns v. Housing Auth. for the City of Douglas,[11] a tenant was raped after an assailant entered her apartment through a window in which she had placed cardboard to fill a gap between the window and an air conditioning unit she installed.[12] There was no evidence indicating how the assailant entered the complex or whether he was a resident.[13]
To support its motion for summary judgment, the [defendant] Housing Authority pointed to: the lack of evidence showing that any of the allegedly unsafe conditions presented by its failure to repair the fence or increase common area lighting or security patrols proximately caused the attack; evidence that [the plaintiff] had equal or superior knowledge of the allegedly unsafe conditions; and evidence that the unsafe condition that actually allowed the assailant *848 to enter her apartment (i.e., the manner in which she installed the air conditioner window unit) was created by [the plaintiff].[14]
The Court pretermitted the issues of superior knowledge and foreseeability of the attack and assumed that the Housing Authority breached its duty by not making the repairs or improvements suggested by the plaintiff. Nonetheless, we affirmed the grant of summary judgment to the Housing Authority because there was no evidence that any such breach caused the plaintiff’s injuries:
[A] jury would have to speculate that improvements to security patrols and lighting, and a repair to the fence, would have prevented the assailant from approaching [the plaintiff’s] apartment unit and reaching through her window to gain entry into her apartment. Speculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment.[15]
Here, a request for more security based upon school ending for the summer and inclement weather, along with a comment that the property along the fence lines and behind the buildings was at the mercy of criminals, coupled with the security company’s desire for more hours (though without any request for more), simply does not provide evidence that Hercules proximately caused George’s injuries sustained when he was shot after voluntarily opening his door to an unknown person after midnight. Because George failed to meet his burden of demonstrating a triable issue of fact as to proximate cause, summary judgment in favor of Hercules on his negligence claim is proper.
(b) Nuisance. Proximate cause is also an essential element in a nuisance claim.[16] As we held in Division 1 (a), George failed to meet his burden of demonstrating a triable issue of fact on this issue; therefore summary judgment in favor of Hercules on his nuisance claim is proper.
*849 (c) Punitive damages. “A claim for punitive damages is derivative in nature and will not lie in the absence of a finding of compensatory damages on an underlying claim.”[17] Because George’s negligence and nuisance claims fail, his claim for punitive damages also fails.
2. Hercules’s counterclaim. George contends that the trial court erred by granting summary judgment to Hercules on its counterclaim that he breached the lease agreement to pay rent after he was injured. We disagree.
In response to Hercules’s motion,[18] George argued that questions of material fact exist as to whether Hercules’s actions and failure to secure his apartment from criminals relieved him of his contractual obligation to pay past-due rent. Specifically, George argued that he should be excused from paying his rent because Hercules’s alleged failure to provide adequate security or to adequately repair the lock on his door (1) breached an implied covenant in the lease, and/or (2) constituted constructive eviction.[19] For the reasons that follow, neither of these defenses relieved George of his contractual obligation to pay rent.[20]
(a) Breach of implied covenant of quiet enjoyment. In support of his argument, George cited to this Court’s decision in Jaraysi v. Sebastian,[21] arguing that Hercules’s actions and failures “constitute^] a breach of the covenant of quiet enjoyment.” This argument is without merit.
(i) “A general warranty of title against the claims of all persons includes three separate covenants: (1) a covenant of a right to sell, (2) a covenant of quiet enjoyment, and (3) a covenant of freedom from *850 encumbrances.”[22] “To constitute a breach of the covenant of warranty, or for quiet enjoyment, an eviction or equivalent disturbance by title paramount must occur, and the mere existence of an outstanding paramount title will not constitute a breach.”[23] Further, “[a] covenant for quiet enjoyment of the premises is necessarily implied in every lease and goes to the extent of [representing] that the landlord has a good title and can give a free and unencumbered lease of the premises for the term stipulated.”[24]
Thus, to establish a breach of the covenant of quiet enjoyment, George had the burden to prove that Hercules did not have good title to lease him the premises or that someone else had paramount title. George’s complaints about The Villas, however, do not concern the issue of a paramount title and, therefore, do not implicate the covenant of quiet enjoyment. Accordingly, George’s defense of breach of the implied covenant of quiet enjoyment failed as a matter of law, though for reasons other than those stated by the trial court.[25]
(ii) In granting summary judgment to Hercules on its claim for unpaid rent, the trial court relied on language in this Court’s decision in Jaraysi to conclude that the actions of third-party criminal actors could not support a finding that Hercules breached the covenant of quiet enjoyment and, therefore, did not relieve George of his obligation to pay rent in this case. We recognize the basis for the trial court’s confusion because we have conflated the defenses of breach of the covenant of quiet enjoyment and constructive eviction in our case law, and we take this opportunity to clarify the issue.
The Jaraysi decision, upon which the trial court relied, arose out of a series of cases dating back to a case issued by this Court a century ago — Adair u. Allen.[26] In Adair, this Court addressed the implied covenant of quiet enjoyment in a lease and held that the covenant “does not amount to an undertaking on [the landlord’s] part that the premises leased are suitable or fitted for the particular use for which they are intended by the lessee[.]”[27] This Court then went on to hold that the implied covenant of quiet enjoyment does not apply to a *851 tenant’s claims arising from a nuisance created and maintained by a third party — in that case a co-tenant.[28]
Since 1923, this Court has issued a series of cases that have misinterpreted Adair and have been relied upon for the erroneous proposition that the covenant of quiet enjoyment encompasses non-title based claims, such as the defense of constructive eviction.[29] But as stated above, the covenant of quiet enjoyment applies only to claims arising from a landlord’s title and does not encompass a non-title constructive eviction defense.[30] Thus, Jaraysi, Myung Sung, Rucker, Topualco, Hardwick, Albert Properties, Kulman, Smith, Fein-berg, Parker, and their progeny are disapproved to the extent they can be interpreted to hold otherwise.
(b) Constructive eviction. We turn now to George’s argument that Hercules’s failure to provide adequate security or to properly secure his lock constituted constructive eviction, thereby relieving him of his contractual obligation to pay rent. This argument is also without merit.
A claim for constructive eviction involves the tenantability of leased property and the nature of the repairs required to restore the property to a safe and tenantable condition.[31]
Two essential elements must be shown to establish the defense of constructive eviction. They are: (1) [tjhat the landlord in consequence of his failure to keep the rented building repaired allowed it to deteriorate to such an extent that it had become an unfit place for the [tenant] to carry on the business for which it was rented, and (2) that it could not be restored to a fit condition by ordinary repairs which could be made without unreasonable interruption of the tenant’s business.[32]
*852 In other words, to prove a constructive eviction that excuses the payment of rent, there must be proof of
either an actual expulsion of the tenant, or some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the [use] of the demised premises. An act may be considered grave in character if it renders the premises untenantable or unfit for the use and benefit of the tenant in accomplishing one or more of the substantial purposes of the lease.[33]
Thus, for George to meet his burden as the nonmovant with regard to his defense of constructive eviction, he was required to identify evidence showing a fact question as to whether Hercules committed some act or omission with regard to the property so “grave in character ... it renders the premises untenantable or unfit for . . . use.”[34] Based on the record before us, George failed to do so. The defense of constructive eviction cannot be premised upon the action of a third party,[35] and there is no evidence that Hercules committed the criminal acts in question. And Hercules’s alleged failure to provide security or to properly repair his lock do not constitute “act[s] of a grave and permanent character”[36] committed with the intention of depriving George of the use of his apartment such “that it could not be restored to a fit condition by ordinary repairs which could be made without unreasonable interruption” of George’s activities,[37] nor did they render the apartment uninhabitable.[38]
Accordingly, we affirm the trial court’s grant of summary judgment to Hercules on its counterclaim for unpaid rent.[39]

*853
Judgment affirmed.

Andrews, P. J., Ellington, P. J., Boggs, Ray, Branch, and Rickman, JJ., concur. Dillard, McMillian, Mercier, and Peterson, JJ., concur fully in Division 1 and in judgment only in Division 2. Barnes, P. J., Miller, P. J., Phipps, P. J., andMcFadden, J., dissent to Division 1 and concur fully in Division 2.

 Matjoulis v. Integon Gen. Ins. Corp., 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

 The summary of incident reports between 2009 and 2011 showed the incidents involved mostly break-ins or unlawful entries to both occupied and empty units. Incident reports also showed armed robberies, a shooting by a tenant’s grandson with no injuries, and “the improper handling of a female sexually.” In 2009, a nonresident’s body was found dead at the gate with a gunshot wound. The incident report summary also showed that there was no reported crime between August 5, 2008, and December 19, 2008, or between August 9, 2010, and April 20, 2011.

 Although the trial court granted summary judgment to Hercules on separate grounds, Hercules raised the lack of proximate cause as its lead argument in support of its motion for summary judgment. We review the grant or denial of summary judgment de novo, and “a *845 judgment right for any reason will be affirmed.” Cieplinski v. Caldwell Elec. Contractors, 280 Ga. App. 267, 276 (633 SE2d 646) (2006).

 (Punctuation omitted.) The Med. Center Hosp. Auth. v. Cavender, 331 Ga. App. 469, 472 (1) (771 SE2d 153) (2015). See also Johns v. Housing Auth. for the City of Douglas, 297 Ga. App. 869, 870-871 (678 SE2d 571) (2009).

 (Punctuation omitted.) Mitchell v. Austin, 261 Ga. App. 585, 587 (583 SE2d 249) (2003), quoting Shadburn v. Whitlow, 243 Ga. App. 555, 556-557 (533 SE2d 765) (2000). If the moving party discharges its burden by pointing out an absence of evidence to support the nonmoving party’s case, “the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.” Lau’s Corp. v. Haskins, 261 Ga. 491 (405 SE2d 474) (1991), citing OCGA § 9-11-56 (e).

 George’s allegations are that Hercules should have provided more security patrols and failed to properly repair the lock on his door after it was kicked in during a previous burglary. George concedes, however, that the lock was functional after it was repaired, contending instead that the door was tighter and more difficult to close after the repair. His reliance on the maintenance supervisor’s admission that the entire front door should have been replaced is unpersuasive because the supervisor testified that he would have replaced the door “[bjecause it’s ugly.” More importantly, the door was locked when George’s assailants knocked on it, and with knowledge that it was more difficult to lock, he voluntarily opened it, rendering moot the question of the functionality of the lock. Any suggestion by George that the tightness resulting from the lock repair prevented him from re-locking it while in a scuffle with armed men forcing entry into his home is simply too speculative to raise a triable issue of fact.

 The other two record citations George provided to support his contention that the security company recommended more hours do not address this issue.

 Nyack’s e-mail reads in its entirety as follows:
Good Afternoon All[,] Due to school year ending and the weather inclement, I want to be able to have more coverage either with additional security or more hours. The current schedule is as follows[:] Mon- Thursday -lpm-ll[;] Friday-Sunday- 8pm-6am or 7am[.] Ilona or Joe please correct me if I’m wrong[.]
My concern is the weekends during the day and the weekdays in the evenings.
Also, we have roughly 6-10 cameras still down and also the cameras that are working need[ ] to be repositioned and refocused[.] Due to my observations and feed back from residents and staff we have reach[ed] the conclusion that the above is necessary to better reduce liabilities on the property. We need to step up security and surveillance. We are limited right now to foot patrol and observation and along the fence line and behind buildings, we are at the mercy of criminal activity on the property.

 For example, as stated previously, in 2008, there was no reported crime between August 5 and December 19. Similarly, there was no reported crime for almost nine months between August 9, 2010, and April 20, 2011.

 See Johns, 297 Ga. App. at 870-871; Fallon v. Metro. Life Ins. Co., 238 Ga. App. 156, 158-159 (2) (518 SE2d 170) (1999) (physical precedent only) (“expert’s opinion that security personnel would have a ‘strong deterrent effect on the type of crime that occurred’ ” was “a conclusory statement” insufficient to create an issue of fact on causation); Post Properties v. Doe, 230 Ga. App. 34, 38-39 (495 SE2d 573) (1997) (physical precedent only) (to conclude that a witness’s contentions regarding insufficient security at an apartment complex, without any evidence of how the plaintiff’s assailant accessed the complex, demonstrated a lack of causation that “would require a jury to engage in pure speculation and guesswork. This is neither required nor allowed in this state”); Collins v. Shepherd, 212 Ga. App. 54, 56 (2) (441 SE2d 458) (1994) (physical precedent only) (“Plaintiff presents no evidence to show that defendant could have prevented the incident from occurring with a different security system in place. A landowner does not become an insurer of safety by taking some security precautions on behalf of invitees. Undertaking measures to protect patrons does not heighten the standard of care; and taking some measures does not ordinarily constitute evidence that further measures might be required.”) (punctuation omitted). Cf. The Bethany Group v. Grobman, 315 Ga. App. 298, 302 (1) (b) (727 SE2d 147) (2012) (affirming denial of summary judgment because there was a question of fact regarding proximate cause based upon evidence of the landlord’s knowledge of prior armed robberies and the testimony of the security company manager “that such incidents increased after [the landlord] reduced its security”). But see FPI Atlanta v. Seaton, 240 Ga.App. 880, 884 (2) (524 SE2d 524) (1999) (physical precedent only) (finding proximate cause due to the foreseeability of the criminal act without analyzing whether a jury question was raised as to causation specifically).

 297 Ga. App. at 869.

 See id.

 See id.

 Id. at 870.

 (Emphasis supplied.) Id. at 871-872. The Court also noted that the intruder was able to enter the plaintiff’s apartment because she left a rear window unsecured, not because the Housing Authority failed to improve security and lighting. See id. at 871. Similarly, in the instant case, the assailants were able to enter George’s apartment because he unlocked and opened the door for them.

 Toyo Tire North America Mfg. v. Davis, 299 Ga. 155, 158 (2) (787 SE2d 171) (2016) (“Causation is an essential element of nuisance. . . .”) (punctuation omitted).

 (Punctuation omitted.) Ratliff v. McDonald, 326 Ga. App. 306, 314 (2) (b) (756 SE2d 569) (2014), quoting!). G. Jenkins Homes v. Wood, 261 Ga. App. 322, 325 (3) (582 SE2d 478) (2003).

 George did not assert either a defense of constructive eviction or breach of the implied covenant of quiet enjoyment in his answer to Hercules’s counterclaim for unpaid rent.

 We note that George’s defenses arise out of cont ract claims, which are entirely separate from any tort claims that may have arisen out of the same conduct.

 George did not argue that Hercules’s actions and inactions constituted a breach of an express contractual provision. And there is no evidence that Hercules breached an express term of the lease such that George was relieved of his obligation to pay rent. To the contrary, the lease did not require Hercules to provide security:
[Hercules] does not offer or provide security or law enforcemen t services for resident’s protection or protection of resident⅛ personal property. [George] agrees to look solely to public law enforcement, emergency services, or fire services for security services or protection. [George] acknowledges that he has an obligation to exercise due care for his own safety and welfare and that [Hercules] is not liable for the criminal acts of other persons.
(Emphasis supplied.)

 318 Ga. App. 469 (733 SE2d 785) (2012) (involving a commercial lease and an express contract of quiet enjoyment).

 McMurray v. Housworth, 282 Ga. App. 280, 285 (2) (638 SE2d 421) (2006). See also OCGA § 44-5-62 (“A general warranty of title against the claims of all persons includes covenants of a right to sell, of quiet enjoyment, and of freedom from encumbrances.”); Whited v. Issenberg, 261 Ga. App. 787, 788 (584 SE2d 59) (2003); White & Corbitt v. Stewart & Co., 131 Ga. 460, 461 (62 SE 590) (1908).

 (Citations, punctuation and emphasis omitted.) Whited, 261 Ga. App. at 788.

 (Citation and punctuation omitted; emphasis supplied.) Dwyer v. McCoy, 236 Ga. App. 326, 329 (5) (512 SE2d 70) (1999).

 See Cieplinski, 280 Ga. App. at 276 (“a judgment right for any reason will be affirmed”).

 18 Ga. App. 636 (89 SE 1099) (1916).

 (Emphasis supplied.) Id. at 636 (2).

 See id. at 637 (6).

 See Jaraysi, 318 Ga.App. at 469; Myung Sung Presbyterian Church v. North American Assn. of Slavic Churches & Ministries, 291 Ga.App. 808, 812-813 (3) (662 SE2d 745) (2008); Rucker v. Wynn, 212 Ga.App. 69, 70-71 (1) (441 SE2d 417) (1994); Topvalco, Inc. v. Garner, 210 Ga. App. 358, 361 (2) (436 SE2d 25) (1993); Hardwick, Cook & Co. v. 3379 Peachtree, 184 Ga.App. 822, 825 (3) (363 SE2d 31) (1987); Albert Properties v. Watkins, 143 Ga. App. 184, 185 (1) (237 SE2d 670) (1977); Kulman v. Sulcer, 99 Ga.App. 28, 29-30 (1) (107 SE2d 674) (1959); Smith v. Hightower, 80 Ga.App. 293, 296-297 (2) (55 SE2d 872) (1949); Feinberg v. Sutker, 35 Ga.App. 505, 506 (1) (134 SE 173) (1926); Parker v. Munn Sign & Advertising Co., 29 Ga.App. 420 (115 SE 926) (1923).

 See Adair, 18 Ga. App. at 636; OCGA § 44-5-62.

 See Overstreet v. Rhodes, 213 Ga. 181, 183-184 (97 SE2d 561) (1957).

 (Punctuationomitted.) Jenkins v. Brice, 231 Ga.App. 843, 844 (1) (499 SE2d 734) (1998). See also Ellis v. Hartford Run Apts., 335 Ga.App. 118, 125 (6) (779 SE2d 103) (2015) (physical *852 precedent only) (holding that the trial court erred by granting summary judgment to landlords on their counterclaim for rent because factual question remained regarding whether tenants were constructively evicted).

 (Punctuation and footnotes omitted.) Jenkins, 231 Ga. App. at 844 (1).

 Id.

 See, e.g., Lumpkin v. Provident Loan Society, 15 Ga. App. 816, 820-821 (84 SE 216) (1915).

 Jenkins, 231 Ga. App. at 844 (1).

 Id.

 See, e.g., Fleming & Bowles v. King, 100 Ga. 449, 452-453 (28 SE 239) (1897). See also OCGA § 44-7-15 (“The destruction of a tenement by fire or the loss of possession by any casualty not caused by the landlord or from a defect of his title shall not abate the rent contracted to be paid.”). To the extent that the door lock needed further repair, George’s remedy under the terms of the lease was to request repairs or to undertake them himself after a reasonable time. See Swim Dixie Pool Corp. v. Kraemer, 157 Ga. App. 748, 749 (1) (278 SE2d 448) (1981); OCGA § § 44-7-13 and 44-7-14 (requiring landlord to keep a premises in repair and limiting a landlord’s liability in tort to certain damages).

 See Cieplinski, 280 Ga. App. at 276.