**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 26, 2021**

# In the Court of Appeals of Georgia

A21A0682. STADTERMAN v. SOUTHWOOD REALTY CO., et al.

DILLARD, Presiding Judge.

Dreyson Stadterman appeals the trial court's grant of summary judgment to Southwood Realty Company and Walden by Triangle Real Estate, LLC in his premises-liability action against them arising from an incident in which he was shot in the parking lot of an apartment complex they own and manage. Specifically, Stadterman argues that the trial court erred in granting summary judgment to the defendants because the shooting was foreseeable to them and there are ample jury questions regarding the breach and proximate-cause elements of his negligence claim. For the reasons set forth *infra*, we affirm.[1]

---

[1] Oral argument was held in this case on April 13, 2021, and is currently archived on the Court's website. See Court of Appeals of Georgia, Oral Argument,

Viewing the evidence in the light most favorable to Stadterman (*i.e.*, the nonmoving party),[2] the record shows that Walden owns a 240-unit apartment complex in Hampton, Georgia, called the Walden Landing Apartments. Walden was formed for the sole purpose of taking ownership of the property, and Southwood manages its day-to-day operations. In July 2017, Stadterman—who is originally from South Carolina—moved to the property and signed a six-month lease for an apartment in the 700 Building.[3] But approximately four months later, Stadterman was unhappy with his work and living situation, so he decided to return to South Carolina. To that end, on the night of October 4, 2017, Stadterman loaded his car with the things he planned to take with him. And on his second trip from the apartment to his car, Stadterman was carrying a plastic bag full of dishes when it accidentally hit a white car, setting off its alarm.

Case Nos. A21A0922, A21A0923 (April 13, 2021), available at https://www.gaappeals.us/oav/A21A0682.php

[2] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

[3] Throughout the record the building at issue is referred to as both the 700 Building and the 7 Building; but because the trial court referred to it as the 700 Building, we do so as well.

Stadterman finished loading his car while the white car's alarm blared, and when he turned to go back inside his apartment, a man in a dark hoodie—who he had never seen before—emerged from one of the other apartments. The man approached Stadterman and began yelling at him, accusing him of "messing with his car . . . [and] his stuff." Stadterman denied doing any such thing, explained that he was merely loading his car, and then placed his hands up to deescalate the situation. Nevertheless, the man—who was never identified—walked closer to Stadterman and lifted up his hoodie to reveal a gun. Then, after attempting to make small talk about the gun, Stadterman turned to walk away, and the man shot him in the back. And despite severe bleeding, Stadterman survived the shooting.

Thereafter, on November 24, 2018, Stadterman filed a negligence action against the defendants, contending that their inadequate security measures were the proximate cause of his injuries. The defendants filed a joint answer, denying most of the allegations in the complaint and asserting numerous affirmative defenses. Discovery ensued, and the defendants eventually filed a motion for summary judgment, which the trial court granted after a hearing on the matter. This appeal follows.

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[4] Furthermore, a *de novo* standard of review "applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[5] Moreover, at the summary-judgment stage, we do not "resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[6] With these guiding principles in mind, we turn to Stadterman's specific claims of error.

1. Addressing Stadterman's second argument first, he contends that the trial court erred in granting summary judgment to the defendants because there was ample evidence to create jury questions regarding the duty and causation elements of his negligence claim. We disagree.

The essential elements of a negligence claim are "the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the

---

[4] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[5] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[6] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

4

plaintiff's injury; and damages."[7] As to causation, our Supreme Court has explained that "[c]ausation is an essential element of . . . negligence claims[,] [and] [t]o establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury."[8] So, no matter how negligent a party may be, if "his act stands in no causal relation to the injury, it is not actionable."[9] Indeed, the plaintiff must introduce evidence "which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."[10] Significantly, a mere possibility of such causation is not enough; and when the matter "remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of

---

[7] *Seymour Elec. & Air Conditioning Serv., Inc. v. Statom*, 309 Ga. App. 677, 679 (710 SE2d 874) (2011).

[8] *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 158 (787 SE2d 171) (2016); *accord Newton's Crest Homeowners' Ass'n v. Camp*, 306 Ga. App. 207, 210 (702 SE2d 41) (2010).

[9] *Purvis v. Steve*, 284 Ga. App. 116, 119 (1) (643 SE2d 380, 383 (2007) (punctuation omitted); *accord Hudson v. Swain*, 282 Ga. App. 718, 721 (639 SE2d 319) (2006).

[10] *George v. Hercules Real Est. Servs., Inc.*, 339 Ga. App. 843, 845 (1) (a) (795 SE2d 81) (2016) (punctuation omitted); *accord Shadburn v. Whitlow*, 243 Ga. App. 555, 556 (533 SE2d 765) (2000).

the court to grant summary judgment for the defendant."[11] Lastly, it is a well-settled principle of negligence law that "the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence."[12]

Here, Stadterman essentially asserts that the defendants' failure to provide adequate security on the property was the proximate cause of his injuries. Specifically, he claims that the shooting would likely have been prevented if the defendants had employed a competent courtesy officer and provided "functional controls on access to the property." And as to access to the property, Stadterman contends that there was evidence the gate at the entrance was perpetually broken. But even if that were true, there is no evidence the unidentified shooter was able to enter the property *because* of a broken gate. Indeed, in his own statement of facts before the trial court, Stadterman acknowledged that the defendants had no idea if the gate was working at the time of the shooting and there was no way of finding out. He also stated that the defendants were unaware of how the shooter gained access to the

---

[11] *George*, 339 Ga. App. at 845 (1) (a) (punctuation omitted); *accord Shadburn*, 243 Ga. App. at 556.

[12] *Wilson v. Guy*, 356 Ga. App. 509, 511 (1) (848 SE2d 138) (2020) (punctuation omitted); *accord Wolfe v. Carter*, 314 Ga. App. 854, 859 (2) (b) (726 SE2d 122) (2012).

property. Presumably, this is at least partially because the shooter was never identified. In any event, even if the gate were broken that day, it is undisputed that when the shooter's car alarm went off, he emerged from *an apartment*, which strongly suggests he was there visiting a tenant who granted him access to the property. At best, even viewing the evidence in Stadterman's favor, whether a broken gate played any role in causing his shooting is purely speculative and insufficient to establish causation.[13]

Additionally, Stadterman claims that his shooting would likely have been prevented if the defendants had employed a competent courtesy officer to deter crime on the property.[14] But even if a competent courtesy officer were employed and living in the apartment complex at the relevant time, there is no evidence that his or her duties would have included patrolling the parking lot of the 700 building at any particular time, much less at the precise time of the shooting. Moreover, several

---

[13] *See supra* note 11 & accompanying text.

[14] Stadterman separately argues that if Prinsten Miller—who was the courtesy officer at the time of the shooting—had been present and performing his duties properly, the shooting might have been prevented. It is undisputed that Miller vacated his apartment at the property *before* the shooting and did not inform the defendants. But even assuming that Miller was an ineffective courtesy officer, we need only address whether *any* competent courtesy officer—either Miller or someone else—would likely have prevented the shooting.

witnesses testified that one of the main reasons to hire a courtesy officer is simply to have a marked patrol car in the parking lot. And even if the courtesy officer happened to be home at the time of the shooting and the presence of a police car might possibly have made the shooting less likely, there is no evidence suggesting that the patrol car's absence made the sudden, violent attack *more likely* than not.[15] Further, Russell Tindall—a corporate representative for the defendants—testified that, even if Miller had been on the property at the relevant time, he would only have a responsibility to calm the altercation between the shooter and Stadterman *if* it were observed or reported. Here, there is no evidence that a competent courtesy officer was likely to observe the instant altercation, and even if he or she was, it is unclear how the officer would have been able to *prevent* such a sudden shooting. Simply put, Stadterman has not identified any additional security measure the defendants could have taken that was likely to have prevented his shooting. Suffice it to say, Stadterman has failed to establish that any inadequate security measures at the property were the cause of his injuries.[16]

---

[15] *See supra* note 10 & accompanying text.

[16] *See George*, 339 Ga. App. at 846, 848 (1) (a) ("A jury would have to speculate that improvements to security patrols and lighting, and a repair to the fence, would have prevented the assailant from approaching [the plaintiff's] apartment unit

2. Stadterman also argues the trial court erred in finding that the shooting was unforeseeable to the defendants. But given our holding in Division 1 *supra*, he has failed to establish the required element of proximate cause, and we need not address this additional argument.[17]

---

and reaching through her window to gain entry into her apartment [despite the fact that certain employees had requested additional security measures prior to the attack]. *Speculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment.*" (punctuation omitted)); *Walker v. Aderhold Properties, Inc.*, 303 Ga. App. 710, 714-15 (694 SE2d 119) (2010) ("[A] plaintiff must do more than merely speculate as to whether enhanced security measures would have prevented an attack. This is so because guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."); *Post Properties, Inc. v. Doe*, 230 Ga. App. 34, 40 (495 SE2d 573) (1997) (physical precedent only) (holding that the plaintiff had not established a causal connection between any act or omission on the part of the property owner and her being raped in her apartment when "the evidence . . . [was] silent or at best speculative both as to how [her] assailant entered both the property and [her] apartment, and conjecture that one of a wide range of security measures *might* have prevented the assault . . . .").

[17] *See Thompkins v. Gonzalez-Nunez*, 355 Ga. App. 144, 145 (843 SE2d 39) (2020) ("[I]f there is insufficient evidence to create a genuine issue as to *any* essential element of a plaintiff's claim, that claim tumbles like a house of cards, and all other factual disputes are rendered immaterial." (punctuation omitted and emphasis supplied)); *Handberry v. Manning Forestry Servs., LLC*, 353 Ga. App. 150, 152 (836 SE2d 545) (2019) (same); *see also Riggins v. City of St. Marys*, 264 Ga. App. 95, 98 (1) (a) (589 SE2d 691) (2003) ("[N]o matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable." (punctuation omitted)).

9

For all these reasons, we affirm the trial court's grant of summary judgment to the defendants.

*Judgment affirmed. Mercier and Pinson, JJ., concur*.